STATE OF MISSOURI, on the Information of JOHN M. DALTON, Attorney General, ex rel. ARTHUR B. SHEPLEY, JR., Relator, v. CLARK R. GAMBLE, IRVING EDISON, WALTER L. METCALFE, ARTHUR B. BAER, and FRANK ASCHEMEYER, Members of and Constituting the Board of Police Commissioners of St. Louis County, Missouri, and ALBERT B. DUBOIS, Superintendent of Police of St. Louis County, Missouri, Respondents, No. 44978—280 S.W. (2d) 656.

Court en Banc, June 28, 1955.

216

*Carroll J. Donohue* and *Lynn Meyer* for relator.

*Herbert C. Funke,* Counselor of St. Louis County, and *David L. Millar* for respondents.

*Erwin Tzinberg,* amicus curiae; *Elmer E. Hilpert* of counsel.

[657] STORCKMAN, J.—This information in the nature of quo warranto attacks the authority of the newly created police department of St. Louis County to take over and perform the law enforcement functions heretofore vested in the sheriff and constables of St. Louis County. The proceeding, instituted by the attorney general at the relation of the acting marshal and chief of police of the city of Ladue in St. Louis County, is directed against the members of the board of police commissioners and the superintendent of police of St. Louis County. It is an original remedial writ of which this court has jurisdiction. Sec. 4, Art. V, Constitution of Missouri, 1945.

On March 28, 1950, the county of St. Louis, by a vote of its people, adopted a charter for its own government pursuant to § 18, Art. VI, of the 1945 Constitution of Missouri. Art. II of the charter provided that among the "County Officers" to be elected were four constables and a sheriff. It also provided that the "elective County Officers * * * shall have all the powers and perform all the duties provided by law, except as otherwise provided by this charter" and in the event of a vacancy in any elective county office "the same shall be filled by the County Supervisor subject to confirmation by a majority of the Council." Art. III, § 6 of the charter provided: "The governing body of the County shall be the County Council which, except as otherwise provided in this charter, shall have and exercise all the powers and duties vested in counties and county governing bodies by the Constitution and laws of the State of Missouri and by this charter. All legislative power of the County shall be vested in the Council."

Section 22 of Art. III of the charter provided: "Pursuant to and in conformity with the Constitution of Missouri and without limiting the generality of the powers vested in the Council by this Charter, the Council shall have, by ordinance, the power: * * * (2) To provide for the compensation of elective County officers unless such compensation of all elective officers [658] shall remain the same as now set by law until changed by ordinance."

The charter as permitted by the constitution provided for its amendment "By ordinance adopted by the Council and submitted to the voters at a general or special election and approved by a majority of those voting on the proposition;" St. Louis County Charter, Art. VIII, § 82(2). Thereafter, on August 25, 1954, the county council enacted Ordinance No. 500 which provided for the submission to the voters of St. Louis County of a proposal to amend the county charter. This proposal was adopted by the voters of St. Louis County at the November 2, 1954, election.

The central purpose of the amendment is shown by § 4.10, Art. II of the charter as amended, which reads as follows:

"All powers and duties of the offices of Sheriff and Constables of the County with respect to preservation of order, prevention of crimes, and misdemeanors, apprehension and arrest, conserving the peace, and other police and law enforcement functions other than those relating to civil actions and the detention, care, custody and control of persons or prisoners in the County Jail, provided by law, shall be vested in and performed by the Superintendent of Police and the Department of Police of the County as hereinafter provided, and the Sheriff and Constables of the County shall have no power or duties with respect to the same except when called upon by the Superintendent of Police as hereinafter provided."

Section 49, Article V of the amendment makes provision for a department of police consisting of a board of five police commissioners, a superintendent of police and the department personnel. The superintendent of police is appointed by the board of police commissioners and the superintendent selects the other personnel on the basis of merit.

The substantial duties and powers of the superintendent and the police department appear in the charter as amended, § 49.10 of Art. V, in part, as follows:

"The Superintendent of Police and the Department of Police, including the duly authorized officers, agents and deputized representatives thereof shall have all the powers and perform all the duties of the Sheriff and the Constables, as provided by law, except those powers and duties expressly vested in the Sheriff and Constables of the County under Section 4.10 of this Charter. In addition thereto, the Superintendent and the Department of Police shall enforce the ordinances and orders of the Council, and have such other powers and duties as may be provided by ordinances of the Council, including, but not limited to, the performance of police duties in incorporated areas of the County under contract authorized or entered into by the Council with the governing body of any such incorporated area. He shall also have the power to deputize members of the police departments of the various municipalities of the County under such standards, conditions and regulations as the Board of Police Commissioners shall approve."

Other parts of the charter amendment are more or less definitive and in aid of the provisions quoted. The St. Louis County Council on February 11, 1955, adopted its Ordinance No. 570 implementing the charter amendment with respect to the creation, organization, administration and operation of the police department. Under the terms of the amendment and Ordinance No. 570, the transfer of functions from the offices of sheriff and constables to the department of police is scheduled to become effective July 1, 1955.

The charter of St. Louis County, the amendment, the ordinances attacked and the form of ballot are all before us in their entirety and there is no dispute about the facts. We have been aided by able briefs of the parties and of the St. Louis County Bar Association as amicus curiae. The [659] case is thus submitted without oral argument.

The relator makes numerous attacks upon the right and authority of the respondents to hold and to exercise the powers and duties of the offices of members of the board of police commissioners and of superintendent of police of St. Louis County. Generally, the essence of these charges is the contention that the sheriff and constables of St. Louis County are not county officers within the meaning of § 18 of Art. VI of the Constitution of 1945, but, on the other hand, are state

officers performing governmental functions which cannot be taken from them by the charter of St. Louis County. Most of the other contentions are ancillary or supplementary to this central proposition.

■ If St. Louis County has the right to do what it is undertaking, its authority must be derived from § 18, Art. VI, of the 1945 Constitution. This being so, we must determine the intent and purpose of these constitutional provisions. The section first appeared in the 1945 Constitution and is wholly new. So far as we have been able to discover, it has never been interpreted or construed by this court. Because of the novel provisions of the section, prior decisions are of little help. Fortunately, the intent is expressed with sufficient clarity that few, if any, construction aids are needed.

The sections of Article VI with which we are chiefly concerned are:

"Section 18(a). County Government by Special Charter—Limitation.—Any county having more than 85,000 inhabitants, according to the census of the United States, may frame and adopt and amend a charter for its own government as provided in this article, and upon such adoption shall be a body corporate and politic.

"Section 18(b). Provisions Required in County Charters.— The charter shall provide for its amendment, for the form of the county government, the number, kinds, manner of selection, terms of office and salaries of the county officers, and for the exercise of all powers and duties of counties and county officers prescribed by the Constitution and laws of the state.

"Section 18(c). Provisions Authorized in County Charters— Participation by County in Government of Other Local Units.— The charter may provide for the vesting and exercise of legislative power pertaining to public health, police and traffic, building construction, and planning and zoning, in the part of the county outside incorporated cities; and it may provide, or authorize its governing body to provide, the terms upon which the county shall perform any of the services and functions of any municipality, or political subdivision in the county, except school districts, when accepted by vote of a majority of the qualified electors voting thereon in the municipality or subdivision, which acceptance may be revoked by like vote.

\* \* \* \* \* \*

"Section 18(e). Laws Affecting Charter Counties—Limitations.—Laws shall be enacted providing for free and open elections in such counties, and laws may be enacted providing the number and salaries of the judicial officers therein as provided by this Constitution and by law, but no law shall provide for any other office or employee of the county or fix the salary of any of its officers or employees."

St. Louis County, regardless of its charter, remains a legal subdivision of the state. Art. VI, §§ 1 and 18(a). As such, it is charged with the performance of the state functions just as other counties are. Section 18(b), supra, expressly requires that the charter must provide "for the exercise of all powers and duties of counties and county officers prescribed by the Constitution and laws of the state."

A charter county differs from others chiefly in the form of county government which it may adopt. The charter must provide [660] for the structure of county government and shall provide for "the number, kinds, manner of selection, terms of office and salaries of the county officers." Section 18(b), supra. In fact, the General Assembly is prohibited from providing for any office or employee of the county or fixing the salary of any of its officers or employees other than election and judicial offices and officers. Section 18(e), supra. This is an express limitation on the legislative power.

Moreover, charter counties are endowed with some of the powers and functions of a municipal corporation in the area outside incorporated cities. They are empowered to exercise legislative power pertaining to public health, police and traffic, building construction, and planning and zoning in such areas. Section 18(c), supra. These are police powers ordinarily vested in municipal corporations. See, for example, §§ 73.010 and 73.110, RSMo 1949, relating to the organization and powers of cities of the first class. A county under the special charter provisions of our constitution is possessed to a limited extent of a dual nature and functions in a dual capacity. It must perform state functions over the entire county and may perform functions of a local or municipal nature at least in the unincorporated parts of the county. These are constitutional grants which are not subject to, but take precedence over, the legislative power. St. Louis County alone has the right to determine "the number, kinds, manner of selection, terms of office and salaries" of its county officers. There can be no doubt that this is a proper constitutional provision, since the people of the state are sovereign (Art. I, § 1) and they "have the inherent, sole and exclusive right to regulate the internal government and police thereof * * *." Art. I, § 3. The constitution is harmonious in recognizing an exception to the provision for general laws for the organization and classification of counties. Art. VI, § 8.

In the case of State on inf. of McKittrick v. Williams, 346 Mo. 1003, 144 S.W.2d 98, a sheriff was held to be a county officer within the meaning of a constitutional provision authorizing the General Assembly to provide for the removal from office of county officers. It was pointed out in this case that the words "state officer" are generally used to refer to officers whose official duties and functions are co-extensive with the boundaries of a state and not to a sheriff whose functions are confined to his county and who is commonly known as and called a county officer. There is now even less reason for doubt

that a sheriff is a county officer, since the 1945 Constitution eliminated the sheriff as a constitutional officer. Our state statutes tend generally to classify the sheriff at the county level. For instance, § 57.080, RSMo 1949, provides that when the office of sheriff becomes vacant it shall be filled by the county court.

We hold that the sheriff is a county officer within the meaning of the constitutional provisions for county charters, and particularly §§ 18(b) and 18(e), Art VI. This clearly appears from the language of the pertinent sections. The result is that provision must be made by the charter county for the performance of the duties enjoined upon sheriffs by our statutes, but the county has the choice as to what officer or agency will be designated to perform the duties. Or the duties may be divided for the purpose of performance as provided by the amendment to the St. Louis County Charter.

What we have said with respect to the sheriff's office applies with even greater force to the constables of St. Louis County. The territorial jurisdiction of a constable is even more limited, and § 63.-050 of our statutes provides that the county court shall appoint a constable if a vacancy shall occur in that office. We also hold that the constables of St. Louis County are county officers as that term is used in the various parts of § 18,.Art. VI of the Constitution.

The records and debates of the 1943-44 Constitutional Convention fortify our conclusion as to the purpose and intent of these county charter provisions of the constitution. [661] Section 18, Article VI of the Constitution was § 20 of File No. 12 which was the report of the Committee on Local Government (City of St. Louis, St. Louis County and Jackson County), No. 8. During the consideration by the convention of this file and section, Delegate Charles H. Mayer, a member of the committee and one of the advocates of the provision, stated: "Of course, officers would have the same power inside the city as outside to enforce the state laws, to enforce any state law * * *. It couldn't enforce those local regulations inside the city but it would enforce the state laws just the same as any other county would do it." Transcript of Debates, page 2127. And further, on pages 2127 and 2128 of the transcript, this exchange occurred:

"MR. MAYER: Well, you may notice in Section 2 [a part of § 20] that it provides what the charter may provide for. It says what officers the county shall have—their selection and their terms of office and their salary. The exercise of powers vested in [and] the performance of all duties imposed upon counties and county officers by the Constitution [and] laws of the State.

"MR. TEE: May I inquire further? You mention that the new governmental creature here would determine what officers they would have. Now, if determining those officers they would or would not determine to have a sheriff, would they . . .

"MR. MAYER (Interrupting): *They might call him anything but they must provide some officer to carry out the laws of the State.*" (Italics added.)

It is proper to consult the proceedings and debates of the Constitutional Convention even though they are never of binding force on the courts and their persuasive value depends upon the circumstances of each case. See Household Finance Corporation v. Shaffner, 356 Mo. 808, 203 S.W.2d 734, 737; Ex parte Oppenstein, 289 Mo. 421, 233 S.W. 440, 444; State ex rel. Aqamsi Land Co. v. Hostetter, 336 Mo. 391, 79 S.W.2d 463, 469; and State ex rel. Russell v. State Highway Commission, 328 Mo. 942, 42 S.W.2d 196, 202; 11 Am. Jur. 707.

██ The relator contends that the ballot under which the proposition was submitted to the voters was a nullity "because of its inaccuracy, vagueness, and generality and because it submitted a multiplicity of propositions," and therefore that the election at which the charter amendment was adopted was void. The official ballot, except for the voting spaces, reads as follows:

"SHALL THE CHARTER OF ST. LOUIS COUNTY BE AMENDED AS PROPOSED BY ORDINANCE NO. 500, 1954, ENACTED BY THE ST. LOUIS COUNTY COUNCIL ON THE 25TH DAY OF AUGUST, 1954?

"Said Charter as so amended would provide for the establishment and operation of a County Department of Police, for the transfer to such Department of all police powers and duties now vested in the Sheriff and Constables of St. Louis County, for the administration of such Department by a Superintendent of Police appointed by a Citizens Board of Police Commissioners, for the establishment of rules and regulations relating to the employment, promotion and retention of employees in such Department, for the powers and duties of the Supervisor, Sheriff and Constables of St. Louis County, and for the establishment of a Department of Justice, all as provided in Ordinance No. 500, 1954, enacted by the St. Louis County Council on the 25th day of August, 1954."

It was not necessary to reproduce on the ballot the charter amendment in its entirety. Enough was printed on the ballot to identify the amendment and show its character and purpose. The ordinance reference was sufficient for those who were interested in further details. State ex rel. Harry L. Hussman Refrigerator and Supply Co. v. City of St. Louis, 319 Mo. 497, 5 S.W.2d 1080, 1085.

[662] The charter was amended in six different places in order to accomplish the purpose of the amendment and to harmonize the charter provisions with respect thereto. The new Department of Police was added to the departments listed in § 37, and to avoid confusion with this new department, the name of the Department of Law Enforcement was changed to the Department of Justice in § 46 and elsewhere where it occurred in the charter. However, the several parts of

the amendment submitted were "plainly so related that, united, they form in fact but one rounded whole" and cannot be said to submit a multiplicity of purposes. Hart v. Board of Education of Nevada School District, 299 Mo. 36, 252 S.W. 441, 442. We rule this assignment against the relator and hold that the ballot provided was a legal, proper and valid one.

It follows from what we have said that Ordinance No. 500 enacted August 25, 1954, the charter amendments approved November 2, 1954, and Ordinance No. 570 enacted February 9, 1955, dealing as they do with the mechanics of law enforcement in St. Louis County, are in harmony with the 1945 Constitution of Missouri. The charter as amended and the ordinances are valid enactments and take precedence over general statutory provisions with respect to the agencies for law enforcement in the various counties of the state, being exceptions thereto provided by the constitution. Tremayne v. City of St. Louis, 320 Mo. 120, 6 S.W.2d 935, 940-941. The amended charter and these ordinances of St. Louis County make adequate provision for the enforcement of state laws in St. Louis County. The sheriff and the constables of St. Louis County are bound by the provisions of the charter as amended and by the ordinances specified.

Relator's duties with respect to the enforcement of the laws of the State of Missouri and the ordinances of the city of Ladue remain unaffected by the charter amendments and these ordinances; he simply deals with and cooperates with a different officer or agency of St. Louis County. This is also true of the other members of the police departments of the various municipalities located in St. Louis County.

The relator places great reliance upon the case of State ex rel. v. Mason, 153 Mo. 23, 54 S.W. 524, which was a mandamus action by the police commissioners of the city of St. Louis against the state auditor to compel him to issue warrants for the payment of the monthly payroll and police expenses. As we have observed previously, the county charter provisions are wholly unlike others in the constitution. The sections of the constitution relating to county charters specifically provide what the county must do with respect to performing state and constitutional functions, and further states what the legislature cannot do. We have considered carefully the numerous other cases and authorities cited by the relator. It would unduly lengthen this opinion and serve no good purpose to discuss each of them in detail. It is sufficient to say that they are not controlling in ruling the matter now before the court.

We have considered all of relator's contentions and find that they are not well taken. We hold that the board of police commissioners and the office of superintendent of police of St. Louis County are properly organized and established in accordance with constitutional authority; that the challenged powers are proper and valid; and that the respondents, Clark B. Gamble, Irving Edison, Walter L. Metcalfe,

228

Arthur B. Baer and Frank P. Aschemeyer, are the duly authorized members of the board of police commissioners of St. Louis County, Missouri, and that the respondent Albert E. DuBois is the duly authorized superintendent of police of St. Louis County, Missouri.

The judgment of ouster is denied. All concur.