Warren SCHMOLL et al., Plaintiffs-Appellants,

v.

HOUSING AUTHORITY OF ST. LOUIS COUNTY et al., Defendants-Respondents.

No. 46875.

Supreme Court of Missouri,

Division No. 2.

Feb. 9, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied March 9, 1959.

J. A. Gochenour and Frank Bild, St. Louis, for appellants.

John J. McAtee, Clayton, Elmer Price, Irvin Dagen, St. Louis, for respondents Housing Authority and others.

William B. Kline, Clayton, C. W. Detjen, St. Louis, for Respondents Luman F. Matthews and St. Louis County.

BARRETT, Commissioner.

In this action resident taxpayers have sought a declaratory judgment with respect to the legality of a cooperation agreement between St. Louis County and the Housing Authority of St. Louis County. Because of the asserted invalidity of the agreement the plaintiffs initially asked for a temporary restraining order enjoining the defendants from carrying out the agreement. The only parties defendant are St. Louis County and its supervisor and the Housing Authority of St. Louis County, its commissioners and executive director-secretary. Upon defendants' separate motions to dismiss for failure to state a claim upon which relief could be granted, the trial court, in effect, made no declaration other than the single conclusion that "St. Louis County had authority to contract with St. Louis County Housing Authority, a municipal corporation, by resolution or order." Upon that single conclusion, apparently, the trial court dismissed the plaintiffs' petition. The plaintiffs have appealed and urge that the cooperation agreement is void for several reasons, that the trial court did not declare, determine and adjudicate the rights of the parties, and it is insisted that this court declare the contract void and accordingly adjudicate the respective rights of the parties and reverse the trial court's judgment dismissing the petition.

The Housing Authorities Law (V.A.M.S. §§ 99.010 to 99.230) and cooperative agreements between the City of St. Louis and Kansas City and their respective housing authorities have been before this court on three occasions; St. Louis Housing Authority v. St. Louis, 361 Mo. 1170, 239 S.W.2d 289; Bader Realty & Inv. Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S.W.2d 489; Laret Investment Co. v. Dickmann, 345 Mo. 449, 134 S.W.2d 65. In those cases the housing act was declared constitutional and the cooperation agreements between the municipalities and the housing authorities authorized and valid. See also Annotations 130 A.L.R. 1069; 172 A.L.R. 966. The essential provisions of the housing law and of the cooperation agreements were set forth in the opinions in those cases and there is no reason to again detail the provisions of the act or to set forth the terms of the agreement. The General Assembly by enacting the Housing Authorities Law and the courts in construing the law and upholding the law and the cooperation agreements have declared the state's public purpose and policy and the essential merits and philosophy of the law are no longer open questions in this court. In this connection, the plaintiffs do not attack the essential validity of the law, nor do they attack the basic findings and facts upon which the cooperation agreements are based; they do not claim that the areas and projects, Jefferson Barracks and Webster Heights, are not appropriate subjects for application of the law and the consequent execution of the agreement. Since the state's public purpose and policy have thus been established and similar cooperation agreements have been held to be authorized and valid, it is appropriate to rather summarily dispose of some of the plaintiffs' claims that this cooperation agreement is void.

For example, it is said that the agreement is void in that it binds the county to waive taxes for the school districts in which the housing developments are located and requires the school districts to furnish facilities to the housing projects when in fact the county or the county council have no

jurisdiction over school districts, their taxes and facilities. It is said that the agreement is void in that it binds the county to furnish the housing authority with sewers when sewers are under the exclusive control and jurisdiction of the Metropolitan St. Louis Sewer District. It is said that St. Louis County "has no authority to contract to pass future legislation" and therefore the agreement is ultra vires in so far as the county agrees in the future to vacate streets or alleys or modify the county zoning law. Some of the statements contained in the argument are mere assumptions on the part of the plaintiffs and the assumptions do not correspond with the actual terms of the agreement. To illustrate, as to zoning the agreement provides, "In so far as the Municipality may lawfully do so" the county will "make such changes in any zoning of the site and surrounding territory of such Project as are reasonable and necessary for the development and protection of such Project and the surrounding territory." The county agrees to furnish "public services and facilities of the same character and to the same extent as are furnished from time to time without cost or charge to other dwellings and inhabitants in the Municipality" and it agrees that it will accept, upon request, the dedication of streets and sewers constructed and paid for by the authority, but we do not find any provision requiring the county, without regard to the powers and functions of the Metropolitan St. Louis Sewer District, to furnish sewers.

These examples are sufficient to illustrate the point that the agreement does not purport to bargain away the powers and duties of either the county zoning board or the Metropolitan St. Louis Sewer District or of any other political subdivision, and, of course, the county could not barter away any of these functions. State on Information of Dalton v. Metropolitan Sewer Dist., 365 Mo. 1, 275 S.W.2d 225. The county only agrees to do in these particular respects what it "may lawfully do," and if it has no power or authority as to these matters, as the appellants assert, it would seem to make but little difference in the essential validity of the agreement. Whether they would have it so or not and regardless of what the agreement may say, the parties, both the housing authority and the county, have contracted in the knowledge that some of these subjects, schools, sewers and zoning, are governed by other constitutional and statutory provisions and in so far as they are pertinent are likewise a part of and may modify this contract.

█ It has been expressly held on two occasions, and all the reasons were fully considered, that housing authority property is exempt from ad valorem taxes. Laret Investment Co. v. Dickmann, supra; Bader Realty & Inv. Co. v. St. Louis Housing Authority, supra. See also: Annotations 133 A.L.R. 365; 152 A.L.R. 239. One of the reasons housing authority property is exempt from taxation is that it too is a municipal corporation and by virtue of the constitution and express legislation such property "may be exempted from taxation by general law." V.A.M.S.Const.Mo. art. 10, § 6; V.A.M.S., § 137.100. If for any reason the housing authority is subject to school taxes the county council could not, of course, bargain away or waive the schools' taxes. The agreement recites that "Under the constitution and statutes of the State of Missouri, all Projects are exempt from all real and personal property taxes levied or imposed by any Taxing Body" and so long as the contract remains in force "the Municipality agrees that it will not levy or impose any real or personal property taxes upon such Project or upon the Local Authority with respect thereto." Nevertheless, as one alternative, the county agrees to accept and the housing authority agrees to make an annual payment "in lieu of taxes may be the amount by which the real property taxes which would have been paid to all taxing bodies for such fiscal year, if such property were not exempt from taxation." And the county agrees to distribute the annual payments among the taxing bodies "in the proportion

which the real property taxes which would have been paid." Inferentially if not directly the provision with respect to annual payments in lieu of taxes was declared to be valid, in a suit for a declaratory judgment, St. Louis Housing Authority v. St. Louis, supra. Furthermore, the school districts, the county zoning board and the Metropolitan St. Louis Sewer District are not parties to this litigation or to this agreement, and except in so far as tangentially indicated it is neither desirable nor possible in this proceeding to adjudicate the rights, duties or obligations of these political subdivisions with respect to the housing authority or the county, even at the behest of resident taxpayers.

Paragraphs 9 and 10 of the agreement refer to contracts and loans between "Local Authority" (Housing Authority of St. Louis County) and "PHA" (Public Housing Administration) and therefore it is said that the contract "does not set out the whole agreement between the parties" as required by the cooperation agreement statute, V.A.M.S. § 70.230. It is said that no time is fixed and no consideration to the county expressed or provided and therefore the agreement is void. As indicated, the two latter contentions were before the court in St. Louis Housing Authority v. St. Louis, supra. The Public Housing Administration is not a party to this suit and it does not appear from this petition how any contract or loan agreement between the local housing authority and the Public Housing Administration could or would affect the agreement between St. Louis County and Housing Authority of St. Louis County. If in fact there is such an agreement or loan (and of course there is), it is not possible to say what its effect may be inasmuch as it has not been included in this action for a declaratory judgment. The cooperation agreement is expressly authorized by the constitution and statutes, it is in writing, it is dated, it is made upon a consideration wholly to be performed subsequent to its execution, it is signed by the parties, and as against the objections here made appears to meet the formal requirements of the general statutes governing contracts by counties and other political subdivisions. V.A.M.S. §§ 432.070, 432.-080, 70.220.

The difficult and essentially meritorious problem upon this appeal is the fact that the county entered into this cooperation agreement by order and resolution of the county council and not by ordinance. In their petition the plaintiffs allege as a ground of invalidity that the cooperation agreement was entered into and approved by an order of the county council, that it was amended by an order or resolution rather than by an ordinance as required by section 22(18), Article III, of its charter and was therefore void. In their separate motions to dismiss the county and its supervisor admit, as is the incontestable fact, that the agreement and its amendment were entered into by an order and resolution. The contract was executed by order and resolution despite the fact that the Home Rule Charter of St. Louis County contains this explicit provision, Art. III, Sec. 22(18):

"Section 22. Pursuant to and in conformity with the Constitution of Missouri and without limiting the generality of the powers vested in the Council by this Charter, *the Council shall have, by ordinance,* the power:

\* \* \* \* \* \*

"(18) To cooperate or join by contract or otherwise with any city, county, state or political subdivision or agency thereof, or with the United States or any agency thereof, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service; and to accept, in the name of the County, gifts, devises, bequests, and grants-in-aid from any city, county, state or political subdivision or agency thereof, \* \* \*."

The respondents meet this challenge and problem in this manner: The constitution, section 16, Article 6, provides that any political subdivision may contract and co-

operate with other political subdivisions "in the manner provided by law." Pursuant to this constitutional authorization the General Assembly has provided, in the statutes governing cooperation agreements between governmental units, that "Any *municipality* may exercise the power referred to in section 70.220 *by ordinance* duly enacted, or, if a *county,* then *by order* of the county court duly made and entered, or if *other political* subdivision, then *by resolution* of its governing body or officers made and entered in its journal or minutes of proceedings, which shall provide the terms agreed upon by the contracting parties to such contract or cooperative action." (Italics supplied.) V.A.M.S. § 70.230. In addition to the charter section (22(18)) empowering the county council to do certain things by ordinance, there is another charter provision, section 23(4), art. III, which says: "In addition to all other powers and duties vested in or required of the Council under the provisions of this charter, the Council shall have power, *by order or resolution,* to do the following: * * * (4) To exercise and perform any and all other powers of a non-legislative nature which it may possess and any and all other duties which it may need to or be required to perform by the Constitution, laws and this charter." With respect to public housing and cooperation agreements it is said that public policy on a state-wide basis was declared when the General Assembly enacted the statutes and that the county in thereafter entering into a cooperation agreement concerning a housing project had no legislative function to perform, that in this regard it could only act as an instrumentality of the state, and that as to the procedure to be followed the county council acted in the capacity of a county court, and if that is not sufficient to authorize the execution of a contract by order that it acted in an administrative capacity only and therefore under its charter (section 23(4)) had the power and authority to enter into the contract by resolution.

In general, if only the constitutional, statutory and charter provisions pointed to by the respondents were involved the argument could be accepted. If that were true the philosophy of the well-reasoned, well-written California case, Kleiber v. City and County of San Francisco, 18 Cal.2d 718, 117 P.2d 657, 658, could be followed. But the California court was not confronted with an explicit charter provision comparable to section 22(18), there one charter provision provided only that "every legislative act shall be by ordinance" while another provision authorized the performance of administrative acts by resolution. In these circumstances it was an easy matter to say that the state's legislative policy had been declared by the enactment of the substantive laws concerning housing and that in subsequently carrying out the policy the city-county acted in an administrative capacity and therefore could lawfully contract by resolution.

 In so far as taking advantage of the housing act is concerned it may be that the county acts administratively, but it will be observed that in inserting subdivision (18) in the ordinance section the authors of the Home Rule Charter for St. Louis County copied, almost literally, the language of the constitution and the cooperation statute. Const.Mo.1945, art. 6, § 16; V.A.M.S., § 70.220. St. Louis County could and did become "a charter" county (Const.Mo. art. 6, §§ 18a–18e), but having done so its charter became its fundamental, organic law and the county council "is obliged to look to the charter for its powers, and acts beyond the powers granted or necessarily implied therefrom are void." State ex rel. Town of Olivette v. American Telephone & Telegraph Co., Mo.App., 280 S.W.2d 134, 137–138. As a charter county it functions in a dual capacity, sometimes performing state functions and sometimes performing municipal functions, and its constitutional grants in these capacities take precedence over legislatively granted power (State on Information ex rel. Shepley Dalton v. Gamble, 365 Mo. 215, 280 S.W.2d 656), but its county council is not a county court under another name. State ex rel. Town of Olivette v. American Telephone & Tele-

graph Co., supra. It is not necessary to point out the differences in ordinances and resolutions or the difference in enacting laws or in acting by one method or the other (5 McQuillin, Municipal Corporations, Sec. 15.02), and it makes but little difference whether the council was acting legislatively or administratively, the fact remains that the charter in the plainest of terms requires that cooperation agreements be entered into by ordinance, not by order or resolution of the county council alone. There is no constitutional or statutory requirement that "a charter county must exercise the powers and duties enjoined upon it by the constitution in precisely the same manner as prescribed by the general law of the state" (Hellman v. St. Louis County, Mo., 302 S.W.2d 911, 916), but its county council is bound and obliged to observe and comply with its explicit organic law. There is here no ambiguity or scope for the operation of the auxiliary rules of construction, it requires no analysis to demonstrate, whatever reasons may have impelled the charter commission, that by the explicit terms of its charter a county could enter into a cooperation agreement "by ordinance" only, not by resolution or order, and having failed to do so this agreement is invalid. State ex rel. Town of Olivette v. American Telephone & Telegraph Co., supra; Board of Public Works v. Sho-Me Power Corp., 362 Mo. 730, 244 S.W.2d 55; Arkansas-Missouri Power Corp. v. Kennett, 348 Mo. 1108, 156 S.W.2d 913. Compare: St. Louis Housing Authority v. St. Louis, supra, and Hellman v. St. Louis County, supra.

Aquamsi Land Company v. Cape Girardeau, 346 Mo. 524, 142 S.W.2d 332, 339, is comparable and peculiarly applicable to this record in many respects. There the court said: " * * * no temporary injunction was sought by appellant in the circuit court, and the chancellor denied a permanent injunction. Appellant did not ask nor obtain an order suspending that decree pending this appeal, and our judgment can speak only from the date of its effective rendition. We have held the use of the park for a 'recreational and community center and fair ground' will not be illegal; and that the use of the funds derived from the bond issue for that purpose would not constitute a diversion of them. That far we have ruled against appellant.

"But we have also ruled against respondents by holding the three alleged contracts between the City and the W. P. A. for the construction, maintenance and completion of the project were void. Does that call for a judgment reversing the decree of the trial court and substituting a decree enjoining the respondents from performing those three illegal contracts? We think not when it is considered that our judgment speaks only from the present. The whole theory of respondents' defense has been that the three contracts and performance thereunder were legal. In other words they have sought to show they are within the law, not to justify its violation. There is no ground for assuming or anticipating they will continue performance of the contracts now that we have held them void. They can make new contracts which will be valid if they are executed as the statute requires and do not unduly delegate the City's administrative and legislative power. We therefore think the decree below denying a permanent injunction should be merely affirmed."

The respondents, Housing Authority of St. Louis County and St. Louis County, should be given a reasonable opportunity to enter into a valid agreement. The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.