Ken CASPER and Harold Meir, as class representatives for and on behalf of the residents of Warson View Subdivision, consisting of approximately seventy families in the City of Olivette, Missouri, Plaintiffs-Respondents,

v.

Richard HETLAGE, Maurice Abramson, John Molloy, Thomas Dunne, John Dowling, George E. Bohrer, and Russell Grantham, constituting the St. Louis County Council, St. Louis County, Missouri; Herbert G. Poertner, Director of Public Works, St. Louis County, Missouri; Industrial Properties, Inc., a corporation; and the City of Olivette, a municipal corporation, Defendants-Appellants.

No. 49001.

Supreme Court of Missouri,

Division No. 1.

July 16, 1962.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 10, 1962.

William E. Gallagher, St. Louis County Counselor, Richard E. Crowe, Asst. County Counselor, for appellants, Richard Hetlage, Maurice Abramson, John Molloy, Thomas Dunne, John Dowling, George E. Bohrer, and Russell Grantham, Constituting the St. Louis County Council, St. Louis County, Missouri; Herbert G. Poertner, Director of Public Works, St. Louis County, Missouri.

Boedeker, Weil & McMahon and Edgar E. Boedeker, Clayton, for appellant, Industrial Properties, Inc.

Carroll J. Donohue, Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, for defendant-respondent, City of Olivette.

DALTON, Judge.

This action involves the validity of an amendment to a Zoning Ordinance of St. Louis County. Plaintiffs seek a declaratory judgment that St. Louis County Ordinance No. 1536 is null and void and they further ask for an injunction to prevent the real estate described in the Ordinance from being used for other than the residential purposes for which it was originally zoned. The trial court declared the Ordinance void, but denied injunctive relief against the issuance of building permits on the ground that the issue was moot.

The action was instituted September 1, 1959, in the Circuit Court of St. Louis County by Ken Casper and Harold Meir, as class representatives for and on behalf of the residents of Warson View Subdivision, consisting of approximately seventy families in the City of Olivette, Missouri, as plaintiffs, against Richard Hetlage, Maurice Abramson, John Molloy, Thomas Dunne, John Dowling, George E. Bohrer, and Russell Grantham, constituting the St. Louis County Council, St. Louis County, Missouri; Herbert G. Poertner, Director of Public Works, St. Louis County, Missouri, and Industrial Properties, Inc., a corporation, defendants. The City of Olivette, a municipal corporation, was also joined as a defendant, although this defendant sought to support plaintiffs' position in the trial of the cause and has filed the only brief in this court supporting respondents' position on appeal.

Ordinance No. 1536 purported to re-zone some forty acres of real estate in St. Louis County lying outside of any of the various incorporated municipalities of the county. It re-zoned the particular area from "C" District (restricted to 20,000 square feet, single family dwellings) to "J" District (for light industrial use). The trial court held Ordinance No. 1536 invalid on the ground that Section 64.140 RSMo 1949, V.A.M.S. had not been complied with. Appellants' position on this appeal is that under the Constitution of Missouri, 1945, Art. VI, Sec. 18, V.A.M.S., and under the various provisions of the St. Louis County Charter adopted pursuant to the said constitutional provision, Ordinance No. 1536 was validly adopted by the St. Louis County Council; and that compliance with the requirements of Section 64.140 RSMo 1959, V.A.M.S. was unnecessary, and its specific provisions inapplicable.

■ Plaintiffs' petition for a declaratory judgment, as filed in the Circuit Court of St. Louis County, presented other issues in addition to the one mentioned, including an allegation that the "purported ordinance number 1536 (1959) constitutes illegal spot-zoning * * * and constitutes a subversion of the character of the neighborhood and will materially and substantially reduce property values and there is no relation to the promotion of the public welfare." These issues were not ruled by the trial court in the judgment entered, but no objection was raised by the plaintiffs in the trial court to the trial court's failure to deal with such issues; nor are any such issues briefed or presented by respondents on this appeal. Accordingly, we shall assume that these issues have been totally abandoned.

In the only brief filed by a respondent in this court it is admitted that the only issue before this court is the correctness of the trial court's ruling that Ordinance 1536 is invalid because it "failed to comply with the requirements of Section 64.140 R.S.Mo." In such situation the parties might well have stipulated in a few pages the facts necessary

for a decision by this court on the mentioned issue. Instead, the appellants have presented a 328-page transcript, most of which consists of the testimony of witnesses on the issue of whether or not Ordinance No. 1536 was reasonable or unreasonable and whether the ordinance, in fact, constituted spot-zoning. Neither appellants, nor the appearing respondent have in any manner reviewed on appeal this particular part of the evidence in the transcript. If such evidence had been excluded from the transcript this court could have avoided the necessity of carefully reviewing evidence which is wholly immaterial to the issue presented.

■ Appellants invoke the jurisdiction of this court on the theory that the construction of the Constitution of Missouri 1945 is directly involved because the trial court held Ordinance No. 1536 void on the sole ground that it was not adopted in full compliance with the provisions of Sec. 64.140, supra. Appellants' contention that Ordinance No. 1536 is valid is based upon the proposition that a particular provision of the Zoning Ordinances of St. Louis County, to wit, Sec. 1003.340 of the St. Louis County Revised Ordinances (Ordinance 542), adopted pursuant to the "Home Rule Charter" of St. Louis County after the charter was adopted by the voters of St. Louis County pursuant to Art. VI, Sec. 18 of the Constitution of Missouri, supersedes the provisions of Sec. 64.140 insofar as the two are in conflict; and that compliance with the requirements of the State's statutes, as to the unanimous vote of county judges, "is not mandatory upon St. Louis County as a 'Home Rule' Charter County under the provisions of the Constitution of Missouri." Since the construction of a provision of the state constitution is required, this court has jurisdiction of this appeal.

In determining the issue presented, a portion of Sec. 18, Art. VI of the Constitution of Missouri 1945 must be set out.

"§ 18(a). County government by special charter—limitation. Any county having more than 85,000 inhabitants, according to the census of the United States, may frame and adopt and amend a charter for its own government as provided in this article, and upon such adoption shall be a body corporate and politic.

"§ 18(b). Provisions required in county charters. The charter shall provide for its amendment, for the form of the county government, the number, kinds, manner of selection, terms of office and salaries of the county officers, and for the exercise of all powers and duties of counties and county officers prescribed by the constitution and laws of the state.

"§ 18(c). Provisions authorized in county charters—participation by county in government of other local units. *The charter may provide for the vesting and exercise of legislative power pertaining to public health, police and traffic, building construction, and planning and zoning, in the part of the county outside incorporated cities; and it may provide, or authorize its governing body to provide, the terms upon which the county shall perform any of the services and functions of any municipality, or political subdivision in the county, except school districts, when accepted by vote of a majority of the qualified electors voting thereon in the municipality or subdivision, which acceptance may be revoked by like vote.*" (Italics ours.)

Reference may be had to the various other subdivisions of Sec. 18, supra, but we find it unnecessary to set them out herein at this time.

■ Of course, as stated in State on Inf. of Dalton ex rel. Shepley v. Gamble, 365 Mo. 215, 280 S.W.2d 656, 659, "St. Louis County, regardless of its charter, remains a legal subdivision of the state. Art. VI, §§ 1 and 18(a). As such, it is charged with the performance of the state functions just as

other counties are. Section 18(b), supra, expressly requires that the charter must provide 'for the exercise of all powers and duties of counties and county officers prescribed by the constitution and laws of the state.' "

On June 13, 1946 a zoning order for St. Louis County was adopted by the County Court of St. Louis County. On March 28, 1950 St. Louis County, by a vote of its people, adopted a charter for its own government, pursuant to § 18, Art. VI, of the 1945 Constitution of Missouri. The 1946 zoning order was continued in effect by Sec. 84, Art. IX of the "Home Rule Charter", which became effective January 1, 1951.

Art. III, § 6 of the charter provided: "The governing body of the County shall be the County Council which, except as otherwise provided in this charter, shall have and exercise all the power and duties vested in counties and in county governing bodies by the Constitution and laws of the State of Missouri *and by this charter. All legislative power of the County shall be vested in the Council."* (Italics ours.)

Section 22 of Art. III of the charter provided: "Pursuant to and in conformity with the Constitution of Missouri *and without limiting the generality of the powers vested in the Council by this Charter, the Council shall have, by ordinance, the power:* * * * (20) *To exercise legislative power pertaining to* public health, police and traffic, building construction, *and planning and zoning* in the part of the County outside incorporated cities, and on such other subjects as may hereafter be authorized by the Constitution or by law, provided that, until superseded by ordinances of the Council, the laws pertaining to said matters shall continue to be valid and effective; * * *." (Italics ours.)

If St. Louis County has the right to do what it has undertaken to do with refer-ence to the re-zoning here under consideration, its authority must be derived from § 18, Art. VI, of the 1945 Constitution and Section 22, Art. III of the Charter of St. Louis County. This being so, we must first determine the intent and purpose of the constitutional provision as applied to the issue presented.

The section (18, Art. VI, supra) first appeared in the 1945 Constitution and was wholly new. After the approval of the "Home Rule Charter," the county's prior zoning order remained in effect, as stated. Thereafter, the County Council adopted Ordinance No. 429 as follows: "The powers and duties of the St. Louis County Planning Commission shall include all of the powers and duties provided by State Law and such others as may be provided by the St. Louis County Charter and by Ordinance of the St. Louis County Council. All orders, regulations, ordinances, amendments thereof, appeals and procedure in matters pertaining to Zoning, the Master Plan and parts thereof, Subdivision Regulations, Building and Setback Lines Along Major Highways in the Unincorporated Area of St. Louis County, and the Comprehensive Major Airport Plan, and all matters pertaining to said subjects and the scope and effect thereof shall be in conformity with and shall be adopted and enacted pursuant to the provisions of Chapter 64, RSMo 1949, *except that such modification or variation in the provisions of the statute as may be authorized or required by reason of the adoption of the St. Louis County Charter may be governed by ordinance."* (Italics ours.) (Section 1001.010 St. Louis County Revised Ordinances.)

By Ordinance No. 542, Art. II, adopted in 1954, it was provided that: "The Zoning Order of the County Court of St. Louis County adopted June 13, 1946, and all amendments thereof whether by Order or Ordinance, the District Maps and all official maps now of hereafter in force and effect and all ordinances hereinafter enacted amending

the foregoing, shall collectively be known as 'The Zoning Ordinance.'" (Section 1003.-020, St. Louis County Revised Ordinances.) This ordinance (by Art. XXV, now Section 1003.340) further provided the method of making zoning changes and amendments. It provided: "1. Procedure for Change in Zoning: Whenever the public necessity, convenience, general welfare and good zoning practice require, the County Council may order, after a public hearing, report thereon by the Commission and subject to the procedure provided in this section, amend, supplement, or change the regulations, zoning district boundaries or classification of property now or hereafter established by this Section. Amendment, supplement, re-classification or change, (including special permits) may be initiated by a resolution of intention by the Commission or the County Council, or by a verified application of one or more of the owners or authorized representative of the owners of property within the area proposed to be changed. * * * 4. It shall not be necessary to publish notice or hold public hearings on amendments to this Chapter pertaining to procedural matters and to the duties and powers of officials, officers, boards, commissions and bureaus in carrying out the regulations of this Chapter. 5. In case of written protest against any proposed change in zoning signed and acknowledged by the owners of twenty percent of the frontage within one thousand feet to the right or left of the frontage proposed to be changed, * * * or in cases where the land affected lies within one and one-half miles of the limits of a municipality, by the City Council or Zoning Board of any such municipality, filed with the County Clerk, *such change in Zoning may not be passed except by the affirmative vote of four members of the County Council.*" (Italics ours.) The total membership of the County Council consisted of seven members. (Sec. 7, Art. III, "Home Rule Charter" of St. Louis County.)

On June 28, 1958, Andrew H. Baur, as the agent for the owners of an eighty-acre tract of land in said county, a part of which tract is in question here, filed a petition requesting the re-zoning of said eighty-acre tract from the "C", 20,000 square feet, single family district to the "J" light industrial district. After publication and notice a public hearing was held before the Planning Commission of St. Louis County on July 15, 1958, at which time the City of Olivette filed a formal protest in writing against the contemplated re-zoning. (It is conceded that the forty-acre tract subsequently re-zoned lies within one and one-half miles of the City of Olivette.) Thereafter, there was no other public hearing held before the Planning Commission and the Planning Commission voted six to none to recommend the re-zoning of the particular forty acres in question here from residential to light industrial use, as hereinbefore stated.

On October 24, 1958, the recommendation of the County Planning Commission reached the St. Louis County Council. On the 6th of May, 1959, Bill No. 98 embodying the proposed amendment to effect the re-zoning of the forty-acre tract in question from one classification to another was introduced in the St. Louis County Council. The City of Olivette thereupon filed a further formal protest to the proposed re-zoning. A protest was also filed in the form of an exhibit alleged to have been signed by 1300 residents of the City of Olivette. On May 13, 1959, the bill was perfected and, on June 17, 1959, a hearing was held before the St. Louis County Council.

Thereafter, on July 1, 1959, Bill No. 98 was passed and adopted by a vote of five members of the St. Louis County Council, with one member abstaining and one member absent. Upon adoption of Bill No. 98 it became Ordinance No. 1536, the ordinance in question. The County Supervisor did not sign the ordinance within the time prescribed by the St. Louis County Charter but, in accordance with the provisions of said Charter, the Council cited said fact by resolution with all seven members voting "yea", and the ordinance was thereby

finally enacted on July 29, 1959. (Article III, Sections 13, 16 and 18, Charter for St. Louis County.)

As stated, the issue presented here is not whether the ordinance was adopted in accordance with the provisions of the "Home Rule Charter" for St. Louis County, but is solely whether the ordinance is invalid by reason of the fact that it was *not* adopted in conformity with the provision of Section 64.140 of Chapter 64 RSMo 1949, V.A.M.S., dealing with "Planning and Zoning—Class One Counties," which section provided: "The *regulations imposed* and the *districts created* under authority of sections 64.010 to 64.160 may be amended from time to time *by the county court by order after the order establishing the same has gone into effect,* but no such amendment shall be made without a hearing before the county planning commission; or if there be no county planning commission, such hearing shall be held by the county zoning commission. * * * In case of written protest against any proposed amendment, signed and acknowledged by the owners of twenty per cent of the frontage within one thousand feet to the right or left of the frontage proposed to be changed, * * * *or in cases where the land affected lies within one and one-half miles of the limits of a municipality, by the city council or zoning board of any such municipality,* filed with the county clerk, *such amendment may not be passed except by the favorable vote of all members of the county court."*

As stated, the trial court held Ordinance 1536 null and void for failure to comply with the provisions of Section 64.140 RSMo 1959, V.A.M.S. in that the vote taken by the St. Louis County Council was not initially unanimous, since only five members then voted in favor of the adoption of Ordinance 1536. The trial court also took the position that the ordinance itself, in effect, incorporated the provisions of Section 64.140 RSMo 1949, V.A.M.S.

 Respondent city's only contention presented under Points and Authorities is that "Ordinance 1536 is invalid for the reason that it was not enacted in conformity with the requirements of Section 64.140 R.S.Mo.1959"; and that "in adopting Ordinance No. 1536 *the County Council of St. Louis County established as its standard the provisions of Sections 64.010 to 64.160"* and, therefore, a unanimous vote of the County Council was required. (Italics ours.) This latter contention is based on the fact that the mentioned Ordinance No. 1536 recites in Section 2 thereof that: "The St. Louis County Council * * * does hereby adopt this Ordinance pursuant to Subsection (20) of Section 22, Article III of the St. Louis County Charter authorizing the Council *to exercise legislative power pertaining to planning and zoning,* and pursuant to Section 64.010 to 64.160 R.S.Mo., 1949." (Italics ours.) In considering this recital in Ordinance No. 1536, we must keep in mind that Section 64.140 RSMo 1949, V.A.M.S., when referring to the *County Court* and requiring a unanimous vote where a protest was lodged, referred to *a three-man administrative body.* Section 7, Art. VI of the Constitution of Missouri 1945 specifically exempts charter counties from the constitutional provision that counties generally shall have a county court, "which shall manage all county business as prescribed by law." A county authorized by Section 18, Art. VI to frame and adopt a special charter for its own government may vest the management of county business in some other county agency as may be provided by such county charter or an ordinance. See also State ex rel. Kowats v. Arnold, 356 Mo. 661, 204 S.W.2d 254, 256 (Per Curiam); and Bradford v. Phelps County, 357 Mo. 830, 210 S.W.2d 996, 999[2]. The St. Louis County Council, which is provided for and was established by Sections 6–23 of Art. III of the "Home Rule" Charter of St. Louis County, is a seven-member body whose powers and duties are fixed by the charter and ordinances. No provision was made in the St. Louis County Charter for a *County Court,* nor for a similar three-member body and the administrative duties usually per-

formed by County Courts were assigned to other administrative officials. The St. Louis County Council under the present "Home Rule" Charter is not a *County Court*, but with respect to zoning and re-zoning it is a legislative body. Section 18(c), Art. VI, Constitution of Missouri 1945; St. Louis County Charter, Section 22(20), Art. III. See also: Section 1.050 RSMo 1959, V.A. M.S., which provides that words in statutes importing joint authority of three or more persons to act shall be construed as authority for a majority of the persons to act unless otherwise declared in the law giving such authority. Since the ordinance here (Sec. 1003.340) requires four votes that would apply in any event under the authority of Schmoll v. Housing Authority of St. Louis County, Mo.Sup., 321 S.W.2d 494, 498[2–4]. And see: Sections 16 and 18 of Art. III of the Charter of St. Louis County.

The briefs filed present no disputed issues of fact. There is no contention that the "Home Rule" Charter, as adopted by St. Louis County, makes any provision for a "County Court" similar to the "County Court" referred to in Section 64.140 RS Mo 1949, V.A.M.S., nor is there any contention that under the provision of the Charter of St. Louis County the County Council performs the functions of a "County Court." See Art. III of the Charter for St. Louis County and particularly Sections 6, 13, 16 and 22(20) thereof. And see: Schmoll v. Housing Authority of St. Louis County, supra, 321 S.W.2d 494; 498[2–4]. Instead, it is the contention of respondent City of Olivette that "The Zoning Ordinance of St. Louis County", as continued in force by Section 84, Article IX of the "Home Rule Charter" and Ordinance No. 542 (see Section 1001.20 Revised Ordinances), made "no valid alternative provision to Section 64.140" and, as stated, that Ordinance No. 1536 "by its own terms adopts Chapter 64 as its standard." Respondent relies on Ordinance No. 429, Section 2, now Section 1001.010 of the Revised Ordinances, hereinbefore set out,

but that section closes with the words, *"except that such modification or variation in the provisions of the statute as may be authorized or required by reason of the adoption of the St. Louis County Charter may be governed by ordinance"*, (italics ours) and Section 3 of the same ordinance (now Section 1001.020) provides: "All Master Plans and parts thereof, recommendations and regulations of the Planning Commission and all supplements and amendments thereto adopted, pursuant to the provisions of Chapter 64, RSMo 1949, require the approval by ordinance of the St. Louis County Council."

We find nothing in the recital of Section 2 of Ordinance No. 1536, relied upon by respondent, from which a conclusion could legally be drawn that the ordinance itself, by its terms, recognized that it could not be properly adopted except by the unanimous vote of the seven members of the St. Louis County Council and, certainly, Section 64.-140 RSMo 1949, V.A.M.S. made no such requirement with reference to the St. Louis County Council.

In Schmoll v. Housing Authority of St. Louis County, supra, 321 S.W.2d 494, 498, 499, the court said: "As a charter county it functions in a dual capacity, sometimes performing state functions and sometimes performing municipal functions, and its constitutional grants in these capacities take precedence over legislatively granted power (State on Information ex rel. Shepley Dalton v. Gamble, 365 Mo. 215, 280 S.W.2d 656), [sic] but its county council is not a county court under another name. * * * There is no constitutional or statutory requirement that 'a charter county must exercise the powers and duties enjoined upon it by the constitution in precisely the same manner as prescribed by the general law of the state' (Hellman v. St. Louis County, Mo., 302 S.W.2d 911, 916), but its county council is bound and obliged to observe and comply with its explicit organic law."

The right of the County Council to exercise legislative power pertaining to planning and zoning was expressly granted by Art. III, Section 22, Subdivision 20 of the Charter. Also note the provision in a latter subdivision, Section 22, subdivision 24, which recognizes that changes may be made as authorized by the Constitution, law and this Charter. Changes were authorized by Section 18(c), Article VI of the Constitution. There is no contention here that in the passage of Ordinance No. 1536 the provisions of Ordinance No. 542, Art. XXV (now Section 1003.340 of the Revised Ordinances of the County) or of any Charter provision were not fully complied with.

■ Respondent further argues that the "Acts of Zoning in St. Louis County are subject to the state policy as set forth in Sections 64.010–64.160", because "zoning is a governmental matter over which the state retains control" and that "even if the power to zone upon the filing of a protest is viewed as a procedural matter under Article VI, Section 18(b), it would be subject to Sections 64.010–64.160." It is true that zoning regulations are an exercise of the police power of the state and that the exercise of the police power is a governmental function, nevertheless a portion of the state's police power may be delegated, and it has been delegated to St. Louis County by Section 18(c) of Article VI of the Constitution of Missouri 1945. State on Inf. of Dalton ex rel. Shepley v. Gamble, supra, 280 S.W. 2d 656, 660 [4, 5]; State on Inf. of Dalton v. Metropolitan St. Louis Sewer Dist., 365 Mo. 1, 275 S.W.2d 225, 230 [2–6].

■ In the Gamble case, supra, the court said: "Moreover, charter counties are endowed with some of the powers and functions of a municipal corporation in the area outside incorporated cities. They are empowered to exercise legislative power pertaining to public health, police and traffic, building construction, and planning and zoning in such areas. Section 18(c), supra.

These are police powers ordinarily vested in municipal corporations. See, for example, Sections 73.010 and 73.110 RSMo 1949, V.A.M.S., relating to the organization and powers of cities of the first class. A county under the special charter provisions of our constitution is possessed to a limited extent of a dual nature and functions in a dual capacity. It must perform state functions over the entire county and may perform functions of a local or municipal nature at least in the unincorporated parts of the county. *These are constitutional grants which are not subject to, but take precedence over, the legislative power.*" (Italics ours.) (280 S.W.2d 656, 660.)

In the case of State on Inf. of Dalton v. Metropolitan St. Louis Sewer Dist., supra, 275 S.W.2d 225, 228, this court, in construing Section 30, Art. VI of the Constitution of Missouri 1945 authorizing the people of St. Louis City and St. Louis County to establish a Metropolitan Sewer District, said: "The authority to prepare such a district plan is a broad grant of legislative power to the freeholders (with confirmation by the voters) similar to the grants in Sections 18, 19 and 20, Article VI, giving certain counties and cities the right to frame, adopt and amend their own charters. It is even greater because their plan supersedes conflicting laws. It is a recognition of the fact that the St. Louis Metropolitan area has many problems which require 'services common to the area'; and it warrants provisions for powers, essential to preservation of the public health and welfare, for a district such as this one which, as hereinafter shown, exercises only governmental powers. The apparent intent is to give the freeholders, with the approval of the voters, power to do whatever the Legislature could ordinarily do with respect to the creation, organization and authority of such a district."

In the case of Hellman v. St. Louis County, Mo.Sup., 302 S.W.2d 911, 916, this court said: "We know of no constitu-

tional or statutory provision that a charter county must exercise the powers and duties enjoined upon it by the constitution in precisely the same manner as prescribed by the general law of the state. * * * Little purpose would be served in authorizing the adoption of charters of local self-government in the more populous counties if such counties could not adopt reasonable means and methods of carrying out their governmental functions in such a manner as to meet the peculiar needs of such counties."

In Tremayne v. City of St. Louis, 320 Mo. 120, 6 S.W.2d 935, 941, this court pointed out that the charter provisions of the city, in order to avoid conflict, "do not have to accord with the state law in mere matters of detail."

■ We must and do hold that the provisions of Section 64.140 RSMo 1959, V.A.M.S. *requiring the unanimous vote of three county judges,* when a protest is lodged against a re-zoning, was not adopted by the St. Louis County Council as a part of Ordinance 1536, nor was such a provision incorporated in the ordinance by the mentioned recital relied upon by respondent. We further hold that, under Section 18, Art. VI of the Constitution of Missouri, the "Home Rule" Charter of St. Louis County and the mentioned ordinances, including Ordinance No. 542, Section XXV, now Section 1003.340 of the Revised Ordinance of St. Louis County, the latter section takes precedence over Section 64.140 in the respects in issue here; and that Ordinance No. 1536 is not invalid by reason of any failure of the St. Louis County Council to comply with the mentioned specific provisions of Section 64.140 providing for the unanimous vote of county judges. We further hold that Section 64.140 with reference to the unanimous vote requirement of county judges as therein provided has been superseded and does not apply to the St. Louis County Council in passing a re-zoning ordinance.

The judgment is reversed and the cause remanded with directions to enter a declaratory judgment to the effect that Ordinance 1536 is not invalid by reason of any failure to comply with the provisions of Section 64.140 RSMo 1959, V.A.M.S., or by reason of the fact that only five members of the St. Louis County Council initially voted in favor of its adoption.

All concur.