RICHARD B. TEITELMAN, Judge,
Dissenting
I respectfully dissent from the principal opinion’s holding that the County’s foreclosure ordinance is void because it exceeds the County’s legislative power granted by article VI, section 18(c) of the Missouri Constitution. I would hold that the ordinance is a valid exercise of the County’s legislative power because the ordinance is precisely tailored to the local symptoms of the foreclosure crisis.[1]
Article VI, section 18(c) authorizes a charter county to enact legislation concerning “any and all services and functions of any municipality or political subdivisions, except school districts.... ” Mo. Const, art. VI, sec. 18(c). As used in article VI, section 18(c), the County’s “functions” include “all of the activity appropriate to the nature of political subdivisions or municipalities which combine to *275 produce services, those specific acts performed by political subdivisions or municipalities for the benefit of the general public.” Chesterfield Fire Prot. Dist. Of St. Louis Cnty. v. St. Louis Cnty., 645 S.W.2d 367, 371 (Mo. banc 1983) (holding that St. Louis County’s charter authority permitted the County to establish a countywide fire standards commission). The legislative powers granted by article VI, section 18 “are constitutional grants which are not subject to, but take precedence over, the legislative power.” State on Info, of Dalton ex rel. Shepley v. Gamble, 365 Mo. 215, 280 S.W.2d 656, 660 (1955). Thus, if the County enacts an ordinance that pertains to a County “function,” that ordinance will supersede a state statute that touches upon that same issue. See State ex rel. St. Louis Cnty. v. Campbell, 498 S.W.2d 833, 836 (Mo.App.1973) (St. Louis county charter provisions regulating the appointment of condemnation appraisers supersedes general state condemnation statutes). The dispositive question is whether the foreclosure ordinance pertains to a County “function” so that the County is empowered to legislate pursuant to article VI, section 18(c).
In Casper v. Hetlage, 359 S.W.2d 781, 789 (Mo.1962), this Court specifically recognized that “the exercise of police power is a governmental function, [a portion of which] ... has been delegated to St. Louis County by Section 18(c) of Article VI of the Constitution of Missouri.” A traditional and long-recognized incident of the local government police power is the regulation of the use and disposition of real property. Consequently, Missouri cases have recognized that perhaps the “only consistent thread in the whole tangled skein of cases” on charter county power is that charter counties have substantial autonomy to regulate the disposition of real property within their borders. See State ex rel. St. Louis Cnty., 498 S.W.2d at 836 (explaining that “the power of condemnation is a matter of local concern so that the procedure specified in the charter supersedes the statutes”); Williams v. White, 485 S.W.2d 622, 624 (Mo.App.1972) (“[T]he power of a county under a Home Rule Charter to exercise legislative powers, including the adoption of zoning ordinances, is derived directly from the Constitution^] ... when adopted such ordinances supersede statutory zoning provisions.”).
Like ordinances regulating condemnation or zoning, the County’s foreclosure mediation ordinance is essentially a regulation of the disposition of real estate within the County’s borders. The County foreclosure ordinance does nothing more than require mediation before homeowners are forced to involuntarily sell and vacate their homes. The ordinance regulates the disposition of real estate and is, therefore, a valid exercise of the County’s police power that is within the purview of a governmental “function” subject to the County’s legislative power granted by article VI, section 18(c).
The principal opinion holds that the ordinance exceeds the County’s legislative authority because it does not regulate local concerns. More specifically, the principal opinion reasons that the ordinance (1) was enacted to address a national crisis and (2) the ordinance is inconsistent with section 443.454, which provides that the enforcement and servicing of loans secured by mortgages shall be pursuant to state and federal law. I respectfully disagree with both propositions.
It is true, as the principal opinion notes, that the County enacted the ordinance to “address the national foreclosure crisis” and its impacts on the County. The fact that the underlying reasons for the foreclosure crisis involve national and international macroeconomic trends does not compel the conclusion that the localized symptoms of this crisis are beyond the County’s constitutionally granted legislative power. *276 For instance, the summary judgment record demonstrates that prior to enacting the foreclosure ordinance, the County experienced a substantial increase in the rate of foreclosures and an attendant decrease in property values and tax revenues.[2] In 2010, the foreclosure rate in St. Louis County was more than four times the historical norm. In some areas, foreclosure-related sales outnumbered owner-initiated sales by a factor of eight. The County’s ordinance is directed specifically at ameliorating these purely local impacts or symptoms of the broader foreclosure crisis. I would hold, consistent with the cases cited by the principal opinion, that foreclosure mediation programs like the one established by the County can be a valid exercise of local government police power.[3]
The principal opinion also asserts that section 443.454 explicitly limits the Count’s power to regulate foreclosures and establishes that the County’s ordinance conflicts with state law. It is true that a charter county ordinance cannot “invade the province of general legislation involving the public policy of the state as a whole.... ” Flower Valley Shopping Cntr., Inc. v. Saint Louis County, 528 S.W.2d 749, 754 (Mo. banc 1975). It is also indisputable that statutes passed by the legislature are an expression of public policy. See State ex rel. Equality Sav. & Bldg. Ass’n v. Brown, 334 Mo. 781, 68 S.W.2d 55, 59 (Mo. banc 1984). However, as noted, article VI, section 18(c) grants to charter counties legislative powers that are grounded in the constitution and “which are not subject to, but take precedence over, the legislative power.” Gamble, 280 S.W.2d at 660. If the passage of section 443.454 could render the mediation program contrary to the “general legislation of the public policy of the state as a whole,” then the scope of the County’s constitutional grant of legislative power would be defined not by the text of the constitution but by the whim of the legislature. Section 443.454 has no application in this case.
For the foregoing reasons, I would hold that the foreclosure ordinance is a valid exercise of the County’s legislative power as granted by article VI, section 18(c) of the Missouri Constitution.

. This opinion draws on the well-reasoned dissent authored by the Honorable Lisa Van Amburg of the Missouri Court of Appeals, Eastern District.

. See also Karen Tokarz, Kim L. Kirn, & Justin Vail, Foreclosure Mediation Programs: A Crucial and Effective Response by States, Cities, and Courts to the Foreclosure Crisis, St. Louis B.J., Summer 2013, at 28 (discussing the problems increased foreclosures impose on local governments).

. See Deutsche Bank Nat’l Trust Co. v. City of Providence, P.C. No. 10-1240 (Providence Superior Ct., May 17, 2010) (upholding city ordinance requiring foreclosure mediation, but severing deed recording requirements that conflicted with state law); Easthampton Sav. Bank v. City of Springfield, 874 F.Supp.2d 25 (D.Mass.2012) (upholding city's foreclosure mediation ordinance in face of contracts clause, state preemption, and police powers challenges); and Jepson v. Deutsche Bank Nat’l Trust Co., 969 F.Supp.2d 202 (D.Mass.2013) (discussing general benefits of pre-fore-closure mediation programs, but dismissing cause of action).