STATE of Missouri, Appellant,

v.

Carl Eugene KERR, d/b/a Kerr IGA
Market, Defendant,

and

The Bank of Atchison County, Respondent.

No. 57594.

Supreme Court of Missouri,
Division No. 1.

April 8, 1974.

Motion for Rehearing or to Transfer to
Court en Banc Denied May 13, 1974.

John C. Danforth, Atty. Gen., Kermit W. Almstedt, Asst. Atty. Gen., Jefferson City, for appellant.

Walter L. Mulvania, Rock Port, for respondent.

BARDGETT, Presiding Judge.

The state has appealed from a judgment of the circuit court which awarded the proceeds derived from a sheriff's sale of defendant Kerr's equipment and inventory to respondent Bank of Atchison County in the amount of $3,025.77. This case involves a construction of portions of chapter 144, RSMo 1969, V.A.M.S., (sales tax), a revenue law of the State of Missouri, and construction of portions of chapter 400, RSMo 1969, V.A.M.S., (Uniform Commercial Code). Because the case involves a construction of the revenue laws of Missouri, this court has jurisdiction. Mo. Const., Art. V, Sec. 3, V.A.M.S.

As of December 31, 1969, defendant Kerr owed the state sales taxes in excess of the sum later derived from the sale of Kerr's equipment and inventory. On April 9, 1970, the state, through the director of revenue and pursuant to sec. 144.380, RSMo 1969, V.A.M.S., filed a sales tax lien with the recorder of deeds of Atchison County covering periods up to December 31, 1969. On April 7, 1970, the director of revenue made a jeopardy assessment for sales tax in the amount of $26,343.44 against defendant Kerr pursuant to sec. 144.290, RSMo 1969, V.A.M.S. On April 21, 1970, plaintiff state filed in the circuit court of Atchison County a petition for delinquent sales tax under jeopardy assessment together with an affidavit for attachment pursuant to sec. 144.390, RSMo 1969, V.A.M.S.

On or about May 22, 1970, respondent Bank of Atchison County moved for and obtained leave to intervene in the suit by the state against Kerr. The bank alleged that on June 15, 1966, it, as a secured party, filed a financing statement in the office of the recorder of deeds of Atchison County covering all of the equipment and inventory of defendant Kerr in accordance with chapter 400, RSMo 1969, V.A.M.S. (Uniform Commercial Code—U.C.C.); that on

September 27, 1968, Kerr executed a security agreement under the U.C.C. as debtor to the Bank of Atchison County as creditor in which Kerr listed as security certain equipment and inventory; that the items attached by the state pursuant to the writ of attachment and held by the sheriff were items covered by the financing statement filed June 15, 1966, and the security agreement executed September 27, 1968. Under the U.C.C. the bank asserted a prior lien to the items seized and prayed that the attachment be dissolved and the items seized by released and delivered to the bank.

Subsequently, and apparently by agreement, the sheriff sold the seized items producing a net of $3,025.77.

The parties agree that the property seized by the sheriff was property covered by the financing statement and security agreement referred to supra; that Kerr was in default on his obligation to the bank and that Kerr owed sales tax to the state in excess of the amount derived from the sale of the seized items.

The financing statement in question was filed only in the recorder of deeds office of Atchison County, the county where Kerr lived and conducted business as Kerr IGA Market. It was not filed with the secretary of state of Missouri. The parties are in agreement that the nature of the personal property which was the subject of the financing statement required that the filing of the financing statement be done pursuant to sec. 400.9–401(1)(c) if the filing itself was to perfect the security interest of the bank. Sec. 400.9–401(1)(c) requires that the financing statement be filed in the secretary of state's office and in this case in the office of the recorder of deeds of Atchison County.

One of the questions on this appeal is whether the court erred in overruling appellant's objection to certain testimony of a Mr. Corken, president of respondent bank; of Mr. Kerr, the defendant; and of Mr.

Mulvania, attorney for respondent bank. The testimony was for the purpose of establishing facts from which the court could find that the state had knowledge of the contents of the financing statement under sec. 400.9–401(2), RSMo 1969, V.A.M.S. *infra,* prior to April 9, 1970, the date the sales tax lien was filed.

*A portion of the testimony is as follows:*

"BY MR. MULVANIA:

Q Your name is William C. Corken?    A Yes.

Q What is your official –    A William H. Corken.

Q William H. Corken. What is your official position, Mr. Corken?

A President of the Bank of Atchison County, Rock Port.

Q How long have you held this position? A Since January of 1970.

Q Mr. Corken, did you have an occasion to have a conversation with Mr. E. O. Kirchhofer?    A I am not certain. I am not certain about that, about that name.

Q As to the name.    A I couldn't be sure.

Q Do you remember talking to any representative of the Department of Revenue?    A Yes, I have talked several times with them.

Q To whom, do you remember?    A Well, of course, Mr. Richard Upton is the sales tax – state sales tax representative in this area, and I had several conversations about this particular situation with him.

Q Can you fix a time when this was done when you have had these conversations with respect to the date of April, 1970?

A Yes, within sixty days previous to that was the times that I was talking with Mr. Upton. Also I had conversations with the state sales tax legal department, a Mr. Park, and another man in that office.

Q Prior to –    A Yes.

Q – April of 1970?    A Yes.

Q What was the sum and substance of those conversations?

MR. ALMSTEDT: Your Honor, I am going to object to that as being hearsay, and also there has been no definite date set as to when the conversation took place for the purpose of effective cross examination.

MR. MULVANIA: How it could be hearsay when it is with the parties themselves I don't know.

THE COURT: Objection is overruled. Take one at a time.

Q (By Mr. Mulvania): Yes, let's take the first representative you spoke to.    A Mr. Upton.

Q Mr. Upton.    A Mr. Upton came into the bank on several occasions and we discussed this situation, and he informed me of the sales tax delinquency.

Q Of whom?    A Of Kerr's IGA. Eugene Kerr, Kerr's IGA Market. I informed him of the lien we had on the property, and he told me, 'Yes,' he said, 'I knew about it because I checked the record at the courthouse.'

Q You talked to Mr. Park. Is he with the Attorney General's office?

A Yes, that's right. The sales tax division, I think, referred me to him, as I remember. * * *."

**64**

■ The state's first point on this appeal is that the court erred in entering judgment for respondent because "(a)ll monies collected by defendant, Kerr IGA Market, as sales tax pursuant to Sections 144.010 to 144.510, RSMo 1969 [V.A.M.S.], constitute a debt owing to the State of Missouri, and upon their misappropriation by defendant, by the latter's failure to remit said monies to the Director of Revenue, the monies or their equivalent value are held in trust by defendant for plaintiff."

State taxes due and unpaid under the provisions of chapter 144, RSMo 1969, V.A.M.S. (sales tax), constitute a debt owed to the state by the taxpayer-merchant, Kerr in this case. See sec. 144.390, RSMo 1969, V.A.M.S.

The state contends that if the merchant fails to remit when due the sums required under the sales tax law, the merchant becomes a trustee for the state of the monies due; that money, equipment, and inventory, equivalent in amount to the tax owed in the hands of the merchant become the trust fund; that the establishment of such a trust is retroactive to the initial withholding by the merchant (failure to pay over the sales tax when due) of the state's funds (the amount of money equal to the sales tax).

The state then reasons that in this case intervenor bank has no claim to any funds so held in trust, whether represented by the funds themselves, property, or proceeds from property belonging to defendant Kerr, the merchant.

Various sections of chapter 144, RSMo 1969, V.A.M.S., set forth the method whereby the state can collect the tax due under this law. Nowhere is there any reference to a trust fund theory nor is it anywhere stated that the merchant is a trustee for the state nor that the monies owed by the merchant as sales tax constitute the corpus of a trust for the benefit of the state. Sec. 144.390(1), RSMo 1969, V.A.M.S. provides that the tax due constitutes

a debt due the state. It does not provide that monies equivalent to the tax due constitute the corpus of a trust for the benefit of the state.

Sec. 144.380, V.A.M.S., *supra*, gives the state a lien against the person named in the notice for unpaid sales taxes and states that the lien so specified is effective from the *time of filing* of the notice in the proper recorder's office.

The effect of the trust fund theory which is proposed by the appellant would be to give a lien to the state against the taxpayer from the date sales taxes were due but not paid. And this would be so even though there had been no notice given by the state to others that there were unpaid sales taxes due from the merchant and that the state claimed a lien upon the merchant's property. It would appear that, under this theory, no private creditor of the taxpayer—the bank in this case—could ever acquire a perfected security interest in any personal property of the taxpayer superior to the claim of the state for sales tax even though the creditor had complied with all of the provisions of chapter 400, RSMo 1969, V.A.M.S.

The legislature specifically designated the manner by which, and the date upon which, a sales tax lien would be effective. Sec. 144.380, RSMo 1969, V.A.M.S. There is no statutory authority nor any persuasive case authority which would authorize this court to hold that the state can acquire a sales tax lien in any manner other than that provided for in Chapter 400, RSMo 1969, V.A.M.S. The point is overruled.

■ Appellant's next point is that respondent bank had not perfected its security interest under sec. 400.9–401(1)(c), RSMo 1969, V.A.M.S. because respondent did not file its financing statement with the secretary of state.

It is agreed between the parties that in order for the *filing* of the financing statement in this case to result in a perfected security interest the provisions of sec. 400.-

9–401(1)(c) would have to be satisfied. Sec. 400.9–401(1)(c) requires that financing statement to be filed in the secretary of state's office *and* in the office of the recorder of deeds in the county where the debtor has his place of business.

Respondent did not file the financing statement in the office of the secretary of state, and therefore, it did not have a perfected security interest under the provisions of sec. 400.9–401(1)(c). However the fact that the respondent did not file the financing statement in the secretary of state's office is not dispositive of this case but rather requires a resolution of appellant's last point.

■ Appellant's last point is that "(t)he trial court erred in finding that the appellant, State of Missouri, had knowledge of the contents of the financing statement and that said knowledge was acquired prior to the filing date by the Director of Revenue of the notice of the lien with the Recorder of Deeds of Atchison County, Missouri, such finding being against the greater weight of the credible evidence in the case."

Sec. 400.9–401(2), RSMo 1969, V.A.M.S., provides:

"(2) *A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless* effective with regard to any collateral as to which the filing complied with the requirements of this article and is also *effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.*" (emphasis supplied.)

Appellant acknowledges that under sec. 400.9–401(2) that "(n)otwithstanding the fact that respondent failed to file a financing statement in the required two places under applicable Missouri law, supra, if, in fact, the State of Missouri had knowledge of the contents of such financing statement

then the appellant did not possess a superior interest in the proceeds under dispute."

Whether or not the state had knowledge of the contents of respondent's financing statement prior to April 9, 1970, the date the state filed its notice of sales tax lien with the recorder of deeds of Atchison County, was a question of fact which, in this court-tried case, was a matter to be determined by the trial judge under the evidence in the case.

The trial court found that respondent's filing of the financing statement in the recorder of deeds' office of Atchison County was done in good faith; that the state had knowledge of the contents of the financing statement so filed prior to April 9, 1970, and of the security agreement by which respondent had a lien upon the chattels subsequently seized and sold. It was upon the foregoing findings of fact, among others, that the trial court held that, as between appellant and respondent, the respondent's lien was superior to appellant's sales tax lien and accordingly entered judgment for respondent.

The state's contention that there is no credible evidence to support the trial court's finding of prior knowledge is premised upon the state's contention that the trial court erred in overruling certain objections made by the state during the testimony of respondent's witnesses Corken, Kerr, and Mulvania. A portion of Mr. Corken's testimony and the objections made by the state's attorney has been set forth supra and the initial question is whether the trial court erred in overruling the objections made by the state to Mr. Corken's testimony.

It is noted that Mr. Corken testified *without objection* that Mr. Richard Upton was the sales tax representative of the department of revenue and that the witness had several discussions with Mr. Upton about Kerr's situation prior to April 1970. He also testified *without objection* that he had conversations with a Mr. Park in the

state's sales tax legal department prior to April 1970.

When the witness was asked to give the substance of those conversations, the state for the first time objected *"to that as being hearsay,* and also there has been no definite date set as to when the conversation took place for the purpose of effective cross examination." (emphasis supplied.)

Nowhere during the course of Mr. Corken's testimony does it appear that the state objected to the witness testifying to the status of Mr. Upton—that Mr. Upton was the sales tax representative of the department of revenue at the time Mr. Upton and the witness conversed concerning defendant Kerr's situation and when Mr. Upton acknowledged that he knew of the contents of the financing statement because he checked it at the recorder of deeds' office. On this appeal the state appears to contend that the trial court should have understood the state's general objection of "hearsay" to mean that the state was objecting to Mr. Corken's testimony that Mr. Upton was the sales tax representative of the department of revenue and that Mr. Upton visited Mr. Corken in that capacity with respect to Mr. Kerr's situation. The transcript does not support the contention that the trial court should have so understood the state's objection. To the contrary, the transcript indicates that during Mr. Corken's testimony the state was not contesting the status of Mr. Upton as testified to by Mr. Corken. It further appears that the state never made any motions to strike any part of Mr. Corken's testimony. Nor does the record indicate that the state contended in the trial court that knowledge on the part of the department of revenue's sales tax representative would not constitute knowledge to the department of revenue—the state.

This is not a situation where the transaction or event had been completed at the time Mr. Upton was speaking to Mr. Corken. Rather it is reasonably inferrable from all the evidence that Mr. Upton was, at the time of his conversation with Mr. Corken, acting in his capacity as a sales tax representative of the department of revenue.

It is the department of revenue that is charged with the responsibility of administering and enforcing the sales tax law and collecting the sales taxes due the state. Chapter 400, RSMo 1969, V.A.M.S. In State ex rel. John Hancock Mutual Life Ins. Co. v. Hughes, 152 S.W.2d 132, 134 (Mo.1941), the court said: "It is quite true that an insurance company, being a corporation and therefore an artificial legal person, can have no knlowedge of any facts save and except as the knowledge of its various officers and agents is imputed to it. It is therefore established law, as held by the Court of Appeals, that where certain false or incorrect statements are made in an application for insurance and the falsity of the same are known to the insurer's soliciting agent, the company will be held to be bound by the agent's knowledge."

Likewise the state can act only through its agents and knowledge of an agent acting within his authority constitutes knowledge to the state.

In view of the unobjected-to testimony of Mr. Corken that Mr. Upton was the sales tax representative of the department of revenue, it was not error for the trial court to overrule the state's objection to the question which elicited the response that Mr. Upton had checked the recorder of deeds' records and knew of the financing statement.

The trial court having properly admitted this evidence could, of course, consider it in reaching its findings and judgment in the case.

The testimony of witnesses Kerr and Mulvania was basically cumulative. The case was tried to the court and it cannot be said that the judgment was clearly erroneous. Rule 73.01. The point is overruled.

The judgment is affirmed.

All of the Judges concur.