In re KARACHI CAB CORP., Debtor.

Albert TOGUT, as Chapter 7 Trustee for Karachi Cab Corp., Plaintiff,

v.

Ruth WAPNICK, Defendant.

Bankruptcy No. 80 B 11878 (EJR).
Adv. No. 81–5302–A.

United States Bankruptcy Court,
S. D. New York.

July 14, 1982.

Albert Togut, New York City, pro se, and as trustee in bankruptcy for Karachi Cab Corp., plaintiff.

Harold Wapnick, Ruth Wapnick, pro se.

EDWARD J. RYAN, Bankruptcy Judge.

Karachi Cab Corp. ("Karachi") prior to instituting arrangement proceedings under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, et seq., executed a security

agreement on August 1, 1979, with Ruth Wapnick ("Wapnick") to secure the payment of a loan made by Wapnick to the debtor. Wapnick lent the sum of $5,800 to the debtor, of which $1,540 has been repaid, leaving an unpaid principal of $4,260 plus interest.

In connection with the security agreement, Wapnick filed a UCC–1 financing statement with the County Clerk of New York on August 15, 1979. The collateral described in both the security agreement and the financing statement consisted of two New York City Taxi and Limousine Commission medallions numbered 5N54 and 5N55 (the "medallions"). There is no record of a filing of the financing statement with the office of the Secretary of State of New York.

On November 7, 1980, Karachi filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Karachi continued to operate its business as a debtor in possession until the sale of the medallions for the sum of $90,500 pursuant to an order entered by this court on February 11, 1981.

On March 26, 1981, an order was entered converting the debtor's Chapter 11 case to a liquidation proceeding under Chapter 7. Plaintiff in the present action, Albert Togut, is the trustee of the debtor. Mr. Togut was at first appointed as interim trustee and he is now serving as permanent trustee. Defendant Wapnick is seeking to assert her secured creditor status and to recover the sum of $4,260 plus interest from the trustee.

By summons and complaint dated May 20, 1981, the trustee commenced an adversary proceeding against Wapnick objecting to Wapnick's alleged secured claim based on her failure to file a financing statement with the New York Secretary of State pursuant to UCC § 9–401.

The issue is whether a creditor, having filed a financing statement with only the county clerk, can assert secured creditor status despite the provision of UCC § 9–401 which requires a financing statement to be filed with the Secretary of State.

A trial on creditor's assertion of secured party status despite non-compliance with UCC § 9–401 was held on November 11, 1981, after which the parties submitted their respective proposed findings of fact and conclusions of law.

The trustee contends that defendant's failure to file a financing statement with the New York Secretary of State has prevented perfection of the security interest. Citing this imperfection and defendant's subsequent lack of secured creditor status, the trustee asserts priority with respect to the collateral covered by the security agreement pursuant to § 544(a) of the Bankruptcy Code.

The taxi medallions listed as collateral in the security agreement were used or bought for use primarily in the debtor's business and as such are classified as equipment within the meaning of UCC § 9–109(2). N.Y. § 9–109(2) (1977 McKinney). The perfection of a security interest in equipment requires filing of a financing statement pursuant to UCC § 9–401(1)(c) which provides in pertinent part:

(1) The proper place to file [a financing statement] in order to perfect a security interest [in equipment] is as follows:

(c) . . . , in the department of state and in addition, if the debtor has a place of business in this state and in only one county of this state, also in the office of the filing officer of such county.

Section 9–401 is explicit in mandating that a financing statement filing with the New York Secretary of State is necessary for the proper perfection of a security interest in equipment. Defendant has produced no evidence establishing that a financing statement had been filed with the Secretary of State. In fact, she has admitted that she did not file a UCC–1 financing statement with the Secretary of State and filed only with the County Clerk of New York. Consequently, the security interest asserted cannot be held to have been perfected within the meaning of UCC § 9–401(1)(c). *In re Leymore Industries, Inc. ("Leymore")*, 2 B.R. 229 (Bkrtcy.S.D.N.Y.1980); *In re Kambourelis*, 8 B.R. 138 (Bkrtcy.N.D.N.Y.1981).

824

■ A careless creditor who has filed in good faith, but not in all the necessary places, may nevertheless be protected in limited situations by UCC § 9–401(2) which provides:

A filing which is made in good faith in an improper place or not in all of the places required by this section

[First] is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this Article and . . .

[Second] is also effective with regard to any collateral covered by a financing statement against any person who has knowledge of the contents of such financing statement.

Wapnick relies on the good faith saving provisions of UCC § 9–401(2) to satisfy the perfection requirements for her alleged security interest. She maintains that while the financing statement was not filed in all the necessary places, UCC § 9–401(2) protects her security interest to the extent that she made a good faith effort to file. While this good faith requirement refers to making an effort to file, it does not give a creditor carte blanche to file wherever it pleases and does not cure a defective state or local filing requirement. Moreover, no amount of good faith can effectuate a completely improperly filed financing statement of which no one has knowledge.

■ The first part of UCC § 9–401(2) protects the secured party who has properly filed a financing statement to perfect security interests in more than one type of collateral and the filing is correct for one but not all of the types of collateral covered. If, for example, Wapnick had properly perfected with respect to one "medallion" but not the other, she could rely on the saving provisions of section 9–401(2) to provide proper perfection for the second medallion.

The second part of UCC § 9–401(2) provides protection to a creditor who has improperly filed a financing statement of which other creditors have "knowledge of the contents of such financing statement." Where such other creditors have this knowledge, or notice of the financing statement

on file, the financing statement will be valid despite its improper filing. In *Leymore*, a case factually similar to the present one, the court held that " . . . the trustee under § 70(c) of the Bankruptcy Act has the status of a creditor without notice." *In re Leymore Industries, Inc., supra* at 230. Other courts have interpreted the good faith saving provisions of UCC § 9–401(2) similarly:

Where the creditor failed to file a financing statement with the Secretary of the Commonwealth as required by § 9–401(1)(a) of the UCC, the creditor was not excused on the ground of good faith filing under § 9–401(2) since that section required either a proper filing as to some property, or knowledge by creditors of the filing of a financing statement with the Secretary or, since the bankrupt debtor's place of business was in a single county, with the Prothonotary of the county, and neither condition existed. Thus, the security interest was not perfected.

*In re Lux's Superette, Inc.*, 1 UCC Rep. Serv. 588 (Ref.Dec.), *aff'd*, 206 F.Supp. 368 (E.D.Pa.1962); *see also, In re Throckmorton's, Inc.*, 4 UCC Rep.Serv. 240 (Ref.Dec.S.D.Ohio 1966); *In re Falkof*, 2 UCC Rep. Serv. 731 (Ref.Dec.D.Mass.1963).

The trustee in bankruptcy has the status of a lien creditor without notice under section 544(a) of the Bankruptcy Code and UCC § 9–301(3). Section 544(a) of the Bankruptcy Code states in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by—

(1) A creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien, . . . whether or not such a creditor exists.

Section 544(a) giving the trustee lien creditor status derives from § 70(c) of the for-

mer Bankruptcy Act and is a "strong arm" clause available to the trustee. This provision gives the trustee the rights of a creditor on a simple contract with a judicial lien on the property of the debtor as of the date of the petition which commenced the bankruptcy action. The practical effect of section 544(a) is to give the trustee all the rights which a hypothetical creditor would have on the property regardless of whether the creditor actually exists.

UCC § 9–301 provides in pertinent part:
(1) ..., an unperfected security interest is subordinate to the rights of
  (b) a person who becomes a lien creditor before the security interest is perfected.
(3) A "lien creditor" means ... a trustee in bankruptcy from the date of the filing of the [bankruptcy] petition.

UCC § 9–301(1)(b) makes the unperfected security interest subordinate to one who "becomes a lien creditor before the security interest is perfected." Section 544(a) of the Bankruptcy Code, coupled with UCC § 9–301(1)(b), requires that the trustee in this case prevail over the unperfected security interest of Wapnick.

In summary:

Wapnick was required, pursuant to § 9–401 of the Uniform Commercial Code of the State of New York, to file a UCC–1 financing statement in the Department of State of New York in order to properly perfect the security interest granted to Wapnick by the debtor in the security agreement between the parties dated August 1, 1979.

In only filing a financing statement with the County Clerk of New York County, Wapnick's security interest was not properly perfected on the date of bankruptcy.

The trustee in bankruptcy as a hypothetical lien creditor under § 544(a) of the Bankruptcy Code has priority over the unsecured defendant with respect to the collateral.

Wapnick's secured claim must be and it is disallowed and reclassified as wholly unsecured.

Settle an appropriate order.