**In re DESIGN CRAFT, INC., Debtor.**

**Bankruptcy No. 81–03677–2–11.**

United States Bankruptcy Court,
W.D. Missouri.

Jan. 13, 1983.

470

Bruce E. Strauss, Kansas City, Mo., for Commerce Bank of Independence.

Mendel Small, Kansas City, Mo., trustee.

William C. Paxton, Independence, Mo., for debtor.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Design Craft, Inc., filed a voluntary petition under Chapter 11 of the Code on November 30, 1981. Commerce Bank of Independence, hereinafter the Bank, was scheduled as a secured creditor holding security interests in inventory, accounts receivable and proceeds, machinery, equipment and other personal property owned by the debtor. None of the collateral is farm equipment, fixtures or consumer goods.

After notice and a hearing on February 3, 1982 this Court authorized debtor to use cash collateral and required it to resume payments to the Bank. No payments were made. For various reasons, upon motion and with the consent of debtor through its counsel, a trustee was appointed to manage the business. The trustee thereafter raised the issue as to whether the Bank had properly perfected its security interest and moved to modify the Court's previous order for adequate protection. After a short hearing the parties stipulated to the material facts and have filed briefs on the issue of law.

### I

Debtor's business is located in Independence, Jackson County, Missouri. The Bank's loan was made in 1979 and the financing statements were filed with the Secretary of State and in the Office of the Department of Records (formerly the Recorder of Deeds) in Kansas City, Jackson County, Missouri. The trustee argues, relying upon state law, that the failure of the Bank to file its financing statement at the Office of the Department of Records in Independence, the county seat, causes the filing to be fatally defective. No court of the State of Missouri has ruled on this precise issue.

Missouri has adopted the Uniform Commercial Code. Section 400.9–401, R.S.Mo. 1969 establishes the proper place to file to perfect a security interest.

"(a) when the collateral is equipment used in farming operations, or farm products . . .

"(b) when the collateral is goods which at the time the security interest attaches are or are to become fixtures . . .

"(c) in all other cases, in the office of the secretary of state and in addition, if the debtor has a place of business in only one county of this state, also in the office of the recorder of deeds of such county, or, if the debtor has no place of business in this state, but resides in the state, also in the office of the recorder of deeds of the county in which he resides."

In Missouri legislation of general applicability is modified often by statutes applying to legal subdivisions of the state described in broad terms. Art. III, Section 40 of the Missouri Constitution prohibits the passing of local or special laws. Thus, counties are divided into classes depending upon the amount of assessed valuation. Section 48.-020, R.S.Mo.1969. Jackson County is a county of the first class. Since 1873, by special state legislation, there have been two offices of recorder of deeds in Jackson County. The proper place to file in Jackson County is determined therefore not only by the provisions of Section 400.9–401 but also by the provisions of Section 59.163, R.S.Mo. 1969 which states that:

"In any county of the first class in which the recorder of deeds is required by law to keep offices both at the county seat and at another place within the county, all deeds, deed of trust, mortgages, and other instruments affecting real property situated in that range in the county where the office outside of the county seat is located shall be recorded in such office and not at the county seat; and the proper place to file, or to file for record if goods are or are to become fixtures, all financing statements or other instruments or statements incidental

thereto, such as continuation statements, termination statements, statements of assignment, statements of release, in order to perfect, continue, terminate, assign, release or affect a security interest in accordance with article 9, part 4, chapter 400, the Uniform Commerce Code, is as follows:

(1) When the collateral is equipment used in farming operations, or farm products, or accounts, contract rights or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods (as such types of collateral are defined in the Uniform Commercial Code) and the debtor's residence is in that range where the office outside the county seat is located, then in such office outside the county seat, or if the debtor is not a resident of this state and the goods are kept in that range where the office outside the county seat is located, then in such office outside the county seat, and in addition, when the collateral is crops, and the land on which the crops are growing or are to be grown is located in that range where the office outside the county seat is located, then in such office outside the county seat;

(2) When the collateral is goods which at the time the security interest attaches are or are to become fixtures, and the land to which the fixtures are or are to be attached is located in that range where the office outside the county seat is located, then in such office outside the county seat, and any such filing shall be for record;

(3) When the collateral is any other kind of property, in the office of the secretary of state and in addition:

(a) If the debtor has a place of business only in such county of this state and only in that range where the office outside the county seat is located, also in such office outside the county seat, or

(b) If the debtor has places of business only in such county of this state but has a place of business both in that range where the office outside the county seat is located, and also elsewhere in such county, then also in such office outside the county seat and also in such office at the county seat, or

(c) If the debtor has no place of business in this state, but resides in that range where the office outside the county seat is located, then also in such office outside the county seat;

(4) In all other cases where the proper place, or one of the proper places, to file or to file for record is in the office of the recorder of deeds of such county, then only in such office at the county seat and not in such office outside the county seat." Amended by Laws 1969, p. 119, § 1.

Section 59.170, R.S.Mo.1969, provides that the

"recorder of deeds for Jackson county, Missouri, shall open an office at Kansas City, in which shall be recorded all deeds ... and other instruments affecting real property situated in range thirty-three in that county, and in which shall be filed or filed for record all financing statements and other instruments or statements incidental thereto affecting personal property ... or other collateral as to which it is the proper place, or one of the proper places, to file for record as provided by law." The county seat of Jackson County, Missouri is Independence.

Under these state statutes Jackson County filings were made dependent upon either location of the business or the residence of the mortgagor. The debtor's business and the property in which the Bank had its security interest were located outside Range 33. To perfect under these statutes, the Bank should have filed its financing statements in the office of the Department of Records in Independence, Missouri.

Since 1971 Jackson County has operated under a home rule charter adopted under the authority granted in Article VI, Section 18(a) of the Missouri Constitution. Under its home rule powers the county legislature passed Ordinance 531 on August 29, 1977. The ordinance provides that:

"Notwithstanding the provisions of Section 59.163 and 59.170, R.S.Mo., 1969, the

county department of records shall accept for filing at either the Independence or Kansas City county courthouse all financing statements and other instruments incidental thereto required to be filed within Jackson County, in accordance with Article 9, Part 4, Chapter 400, R.S.Mo., 1969, the Uniform Commercial Code, without regard to any range line in the county."

The evidence presented at the hearing shows that all financing statements and other UCC filings are kept and indexed in Kansas City. Such documents may be presented at the Independence office but they are sent to Kansas City for processing. It is possible to obtain a filing number in Independence, but only if the document is presented in person. Searches to determine the status of a filing can only be conducted in Kansas City and continuation filings and releases can only be filed in Kansas City. This testimony was stipulated to be accurate as to procedures which existed at the time of this transaction.

The Bank contends that it followed the procedure established by county ordinance and its security interest is perfected. The Bank argues that filing of the documents in Independence is a futile gesture since there is no assignment of a filing number, no stamping of time received nor indexing to fulfill the purposes of the Uniform Commercial Code. The Bank contends that compliance with state statutes is impossible in light of the county ordinance and the structure of the Department of Records.

The trustee contends that the county ordinance conflicts with state law and is void so that compliance with the terms of the ordinance does not perfect a security interest. The trustee argues that a creditor can file in Independence relying upon the provisions of Section 400.9–403, R.S.Mo.1969, a part of the Uniform Commercial Code, which provides that:

"(1) Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this article."

The evidence shows that the Department of Records in Independence will accept UCC documents if presented. The trustee argues that this constitutes a filing which could be in compliance with Section 59.163 requirements and since the Bank did not file in that manner, it is not perfected.

## II

The charter for Jackson County was adopted under the authority granted county inhabitants by Article VI, Section 18(a) of the Missouri Constitution. In part, Article VI, Section 18(b) states that:

"The charter shall provide . . . for the form of the county government, the . . . kinds . . . of the county officers, and for the exercise of all powers and duties of . . . county officers prescribed by the constitution and laws of the state."

Pursuant to this delegation of power, the charter for Jackson County created a Department of Records to perform those functions allocated by law to a recorder of deeds. While the charter was not introduced into evidence, the parties agree that the Department of Records does perform the duties of the recorder of deeds. Such a designation of title and duties is permissible. A charter county remains a legal subdivision of the state and "is charged with the performance of the state functions just as other counties are." *Casper v. Hetlage,* 359 S.W.2d 781, 784–85 (Mo.1962). The "county has the choice as to what officer or agency will be designated to perform the duties. Or the duties may be divided . . ." *State ex rel. Shepley v. Gamble,* 365 Mo. 215, 280 S.W.2d 656, 660 (1955).

The language of Article VI, Section 18(b) of the Constitution empowers charter counties to determine not only the kinds of officers but how their duties are to be exercised. This authority, however, is hedged by constitutional and statutory restrictions.

"Ever since Missouri inaugurated the 'home rule' charter scheme of government in 1875, the courts have wrestled with the problem of demarcating the proper sphere of 'home rule' . . ." [citation omitted].

"Often there is a conflict existing between the provisions of a charter ... and the general law. When the conflict occurs, the resolution thereof, as a general principle, depends on whether the functions are 'private, local corporate functions' or 'governmental'." *State ex rel. St. Louis County v. Campbell,* 498 S.W.2d 833, 836 (Mo.App.1973).

In *State ex rel. Spink v. Kemp,* 365 Mo. 368, 283 S.W.2d 502 (1955) the issue before the court was the definition of general revenue of Kansas City which provided a source of funds for the police department budget. The department was under state control and the budget amount determined by state law. The city argued that certain monies were not in the general fund. The Court pointed out that allowing the city to define the general fund under its charter powers would enable it to subvert the intent of state law and could not be allowed. The charter must be "consistent with ... laws of the state ... [and may not] attempt to change the policy of the state as declared for the people at large ... nor may it be out of harmony or in conflict with the controlling law of the state." 283 S.W.2d at 514.

In *State ex rel. St. Louis County v. Kirkpatrick,* 426 S.W.2d 72 (Mo.1968), the court ruled that a charter county could not change by ordinance and referendum the method for the selection of state court judges. The judges were not county officers and their selection was a matter reserved to the state. In *Grant v. Kansas City,* 431 S.W.2d 89 (Mo. en banc 1968), the court struck down an attempt by the City Council of Kansas City to submit to election a proposal to assess a 1% earnings tax when state law only authorized collection of one-half percent. The court noted that ordinances must be consistent with state law but only substantial harmony is required.

In *State ex rel. St. Louis County v. Campbell,* supra, the court permitted the county, by ordinance, to select condemnation appraisers. Such activity, said the court, was traditionally a matter of local concern. Noting that essential protections,

such as the right to jury trial, were preserved, the court held that charter provisions would prevail over general statutes. In *Flower Valley Shopping Ctr. v. St. Louis County,* 528 S.W.2d 749 (Mo. en banc 1975), a city ordinance required security officers in shopping center parking areas of a certain size. The ordinance was challenged as unconstitutional and beyond the scope of charter powers. Without much analysis the court struck down the ordinance holding that regulation of police is a matter reserved to the state.

Similarly in *State ex rel. O'Brien v. Roos,* 397 S.W.2d 578 (Mo.1965), the court struck down a county ordinance setting constable fees, saying the subject of fees was reserved to the state; and in *State ex rel. St. Louis County v. Edwards,* 589 S.W.2d 283 (Mo. en banc 1979) the court held a county ordinance attempting to assert control over juvenile court facilities void as contradicting state law. "The answer depends on whether the control of juvenile detention facilities is a matter which is within the province of general legislation involving the public policy of the state as a whole." 589 S.W.2d at 286. The court concluded that control of such facilities was reserved to the state. See also *Carson v. Oxenhandler,* 334 S.W.2d 394 (Mo.App.1960).

Shortly after St. Louis County adopted its charter, an amendment was proposed to transfer the duties performed by sheriffs and constables to a county police department. The amendment was tested in a suit which contended that sheriffs and constables were state officers who could not be deprived of power by a local charter. The court held that sheriffs and constables were county officers. "The result is that provision must be made by the charter county for the performance of the duties enjoined upon sheriffs by our statutes, but the county has the choice as to what officer or agency will be designated to perform the duties. Or the duties may be divided ..." *State ex rel. Shepley v. Gamble,* 365 Mo. 215, 280 S.W.2d 656, 660 (1955). The court noted that the charter provisions were in harmony with state law and would take

precedence over general statutory provisions.

In *Hellman v. St. Louis County*, 302 S.W.2d 911 (Mo.1957), plaintiff challenged the hiring of appraisers to assist in assessment. The court noted that counties have powers expressly granted or necessarily implied. The court also noted that appraisal and assessment of property were the result of the declaration of public policy and that the hiring of appraisers was a necessary part of the performance of that function. The charter county has, under the state constitution, "an implied grant of such powers as are reasonably necessary to the exercise of the powers granted and are not contrary to the public policy of the state." 302 S.W.2d at 916. The court held that the hiring of appraisers was within the powers of the county officer.

> "We know of no constitutional or statutory provision that a charter county must exercise the power and duties enjoined upon it by the constitution in precisely the same manner as prescribed by the general law of the state . . . Little purpose would be served in authorizing the adoption of charters of local self-government in the more populous counties if such counties could not adopt reasonable means and methods of carrying out their governmental functions in such a manner as to meet the peculiar needs of such counties." 302 S.W.2d at 916.

Definitive principles emerge from these cases to assist the courts in determining whether a county ordinance is valid. Obviously, the ordinance cannot act in an area reserved to state law. The ordinance cannot contradict state public policy declared for the people at large. The ordinance must be in harmony with state law and it must be an exercise of power either expressly granted or impliedly necessary to the performance of duties by a county officer.

On the basis of these guiding principles, this Court concludes that Jackson County has the power to enact this ordinance. The question remaining is whether the ordinance which purports to change some statutory procedures for the filing of financing statements in Jackson County is such a contradiction of state law that it is not in harmony with state law and violates state public policy for the people at large and, therefore, is void.

### III

The Uniform Commercial Code was adopted in Missouri in 1963. Section 59.163 was in effect at that time and was amended purportedly to bring it into conformance with the Uniform Commercial Code. While no court has passed upon the relationship between Section 59.163 and the ordinance, the predecessor versions of Section 59.163 have been the source of some litigation which casts some light upon the present problem.

The issue of the proper place of filing was the subject in *In re McKinley*, 138 F.Supp. 4 (D.C.W.D.Mo.1956). The referee in bankruptcy had held a chattel mortgage to be void where the chattel was not in the county, the debtor resided in Range 33 and the recording was made at the Independence office of the Recorder of Deeds. The district court construed Section 443.460, R.S.Mo.1949 together with Section 59.170, R.S.Mo.1949 and concluded "that a chattel mortgage, made by a resident of Jackson County, may be filed at either the main office of the Recorder in Independence or at his branch office in Kansas City, regardless of whether the mortgaged chattel be 'situated' in Range Thirty-Three or in Range Thirty-Two in Jackson County." 138 F.Supp. at 7. This conclusion was necessary, said the court, because it is the only result which gives meaning to all the statutory language, reinforces "the Missouri scheme of giving constructive public notice" and which reads the statutes "together as one integrated scheme or plan of filing chattel mortgages in Jackson County." 138 F.Supp. at 7.

The district court's opinion in *McKinley* was affirmed on appeal. *Bostian v. Universal C.I.T. Credit Corporation*, 238 F.2d 809 (8th Cir.1956). That court noted that the district court's characterization of the stat-

utory area as confusing and filled with uncertainty was correct and concluded by stating that:

"This court has repeatedly said that with respect to such questions it will accept the considered views of the trial judge unless convinced of error, and if he has reached a permissible conclusion as to a question of local law, there will be no reversal." 238 F.2d at 812.

Section 443.460 dealt with requirements making valid a mortgage of personal property and provided in some instances that recording was to be "in the county in which the mortgagor or grantor resides." The requirement as to where to file was incorporated essentially unchanged into the Uniform Commercial Code in Section 400.9–401, R.S.Mo.1969.

The proper place to file was again the subject of litigation in *Gross v. Merchants-Produce Bank,* 390 S.W.2d 591 (Mo.App. 1965). There the mortgage was recorded in Kansas City. The property was in Range 33 but the mortgagor lived in Range 32. The trial court held that the mortgage was improperly filed. The appellate court reversed, holding that the mortgage could be filed anywhere if the mortgagor resides outside Range 33.

The Court remarked that the "statutes may be considered historically for whatever light may thereby be shed on the purpose and intent of the legislature ..." 390 S.W.2d at 594. The court took note of the decision in *In re McKinley,* supra, and the likely reliance of parties upon it. It went on to attempt to reconcile Sections 59.163 and 443.460, noting that:

"It is the established rule of construction that the law does not favor repeal by implication and where there are two or more provisions relating to the same subject matter they must, if reasonably possible, be construed so as to maintain the integrity of both." 390 S.W.2d at 598.

Section 59.163 was amended in 1965 and 1969 to deal with the situations described in the *McKinley,* supra, and *Gross,* supra, decisions, and according to the revisor's notes, to bring the statute into conformity with

the Uniform Commercial Code. As it presently reads, Section 59.163 restricts some filings to only the office outside the county seat and some filings to only the office at the county seat.

While not expressly so written, it is apparent that this statutory scheme applies only to Jackson County. *Gross,* supra, 390 S.W.2d at 594, 598. Section 59.170, R.S.Mo. 1969, authorizes the opening of the second office and Section 59.180, R.S.Mo.1969, requires space to be allocated. But Section 59.167, R.S.Mo.1969, eliminates the requirement of a prior version that abstracts of filings from the other office be kept at the place where the document was not filed.

Thus, the present state of law is that generally a filing is to be made in the county where the mortgagor resides or where his place of business is located, (Section 400.9–401), but in Jackson County the place of filing depends upon the range as well as the county. In order to be certain of his status, a creditor would have to know what range the business was in and where debtor resided and would have to search both indices.

## IV

■ This Court is bound by decisions of the courts of Missouri as to the meaning of state law. *Harkins v. Wyrick,* 589 F.2d 387, 391 (8th Cir.1979); *United States v. City of St. Louis, et al.,* 597 F.2d 121, 124 (8th Cir.1979). In the absence of a direct interpretation, this Court is directed to reach a considered permissible conclusion. *Bostian,* supra, 238 F.2d at 812; *Wash v. Western Empire Life Ins. Co.,* 298 F.2d 374, 378 (8th Cir.1962). This Court is especially mindful of its obligation to construe the language of the various constitutional provisions, statutes and the ordinance in such a manner as to give meaning to all, reconciling them, if possible, and giving effect to the clear legislative intent.

Earlier in this opinion, this Court concluded that the Jackson County Legislature had the authority to enact the ordinance here in question. The Court must now determine

whether the ordinance is valid. The question turns on whether it violates public policy of the state as promulgated for the people at large.

The policy statement contained in the filing statutes, Sections 59.163 and 400.9–401, must be read in light of the purposes of a filing system in general and of the Uniform Commercial Code in particular. The filing process is intended to create a system of public notice. *In re McKinley,* supra, 138 F.Supp. at 7. In the particular instance of the Uniform Commercial Code, it "is to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and greater certainty." Donnellan, "Notice and Filing Under Article 9", 29 Missouri Law Review 517 (1964).

In Missouri, as a matter of state law, the creation and maintenance of a filing system for Uniform Commercial Code documents is the responsibility of the county recorder of deeds or an officer, however, described, with those duties. Thus, if a creditor desiring to file a financing statement or other UCC document or to search a record can find the office of the recorder, he can accomplish his purpose. The policy statement contained in Sections 59.163 and 400.9–401 is that in each county of the State of Missouri there shall be a filing officer and a place where commercial documents can be filed, indexed and examined. There is a further policy statement in that the documents must be filed in a county having a relationship, either by location of collateral or residence, to the mortgagor.

But to say that the detail set out in Section 59.163(3) and (4) is a policy statement and a matter of concern to the people at large is to ignore reality and to carry analysis to an extreme which has no foundation in reason or philosophy. The statute purports to apply to all first class counties in Missouri. There were only four as of 1975. There are altogether 113 counties in the state. The statute really only applies to Jackson County for no other first class county has two offices for the recording of deeds. Certainly no person living outside Jackson County has any concern about

ranges within the county and could only be confused by filing requirements that relate to a geographical entity less than a county in size. Even people living in Jackson County would be hard pressed to identify the range in which they live. Originally adopted apparently to accomodate the residents of Kansas City, the division of the county into ranges for filing has lost much of its usefulness as the city now occupies parts of three counties and extends well beyond Range 33 in Jackson County.

The ordinance eliminates confusion as to where to file a UCC document. It consolidates records, thus expediting record searches. It reinforces the principles of simplicity and certainty that are the foundations of the Uniform Commercial Code procedure. A person, even one not a resident of Jackson County, files in one place and searches in one place.

█ The court concludes that Jackson County has met its obligation to carry out duties imposed by state law by establishing the Department of Records. The ordinance providing for the filing of documents is a matter of local corporate concern. It is in harmony with state law. It does not contradict but rather reinforces state-wide public policy expressed in general recording statutes and in the Uniform Commercial Code.

The Supreme Court of Missouri recognizes that home rule governments have discretion in carrying out duties imposed by state law. *Hellman,* supra. In an article studying the home rule experience, the authors note that "mere administrative details of statutes are not controlling on charter counties. A charter county is thus free to adopt procedures consistent with its streamlined structure to fulfill its state functions . . ." Freilich, et al, "Home Rule for the Urban County." 39 UMKC Law Review 297, 330 (1971).

This Court's conclusion that the ordinance is harmonious and consistent with state policy is supported by the language of Section 400.9–401(2), R.S.Mo.1969, which provides that:

"A filing which is made in good faith in an improper place . . . is nevertheless ef-

fective with regard to any collateral as to which the filing complied with the requirements of this article . . ."

The "requirements of this article" as they apply to the facts before the Court are that the documents be filed with the Secretary of State and in the county where the mortgagor has his business or resides. The Bank did make such filings. Section 59.163, which varies those requirements, is not part "of this article [article 9 of the Uniform Commercial Code]".

The savings provision of Section 400.9–401(2) is read liberally by Missouri courts. See *State v. Kerr*, 509 S.W.2d 61 (Mo.1974), where the court held that a lien creditor prevailed over a subsequent attaching creditor with actual knowledge even though there had been no filing with the Secretary of State. Here, the Bank has filed in both required places. Compare *In re Karachi Cab Corp.*, 21 B.R. 822 (Bkrtcy.S.D.N.Y. 1982), where the Court held that a good faith effort did not cause a creditor to be perfected against the trustee where there was no filing with the Secretary of State.

Also persuasive is the fact that the ordinance is the act of a legislative body exercising its discretion in an area where it has a delegation of power under the constitution and under its home rule charter. It is not the rule of a court stepping into an area reserved for legislative choice, a dilemma recognized in both *McKinley*, supra and *Gross*, supra, where the courts rejected certain arguments of the parties as calling for the courts to make legislative choices. It is also of some limited significance that neither the courts nor the legislature of the state have taken any action to void the ordinance since its enactment in 1977. Here, rather than legislating, this Court is reconciling conflicting statutory language in light of guidelines established by courts of the State of Missouri.

The trustee points to an opinion of the County Counselor of St. Louis County styled "Authority of County to Require Affidavit of Selling Price", Op. No. 47, July 18, 1975, which declares a requirement for the filing of a certificate of value along with the document of transfer of real prop-

erty to be outside charter powers. Such an opinion is not a rule of decision. *Gershman Investment Corp. v. Danforth*, 517 S.W.2d 33 (Mo. en banc 1974). The opinion also is not in point. It deals with the type of documents to be filed in a transaction, obviously a matter of wide concern. Here, the issue is *where* the document is to be handed to the filing officer in a system otherwise in conformance with the requirements of state law.

The Court finds, therefore, that Ordinance 531 of Jackson County is in harmony with the public policy of the State of Missouri as expressed in statute. The Court also finds that the ordinance was enacted by the Jackson County Legislature pursuant to powers delegated to it by the constitution and in accordance with the charter. Having reached these conclusions, the Court need not determine whether a creditor can, in fact, "file at the office of the Department of Records in Independence" as the trustee argues.

The Bank having filed its financing statements with the Secretary of State and in Jackson County, the Court finds that it holds a perfected secured position in the property of the debtor. The Motion of the Trustee to Modify the Order for the Use of Cash Collateral is DENIED.